PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2683
_____

VICTOR MANUEL FRUTIS SALMORAN,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                        Respondent
_____

On Petition for Review of an Order of the Board of
Immigration Appeals
(Agency No. A095-475-043)
Immigration Judge: Honorable Silvia Arellano
_____

Argued
June 19, 2018
_____

Before: GREENAWAY, JR., RESTREPO, and BIBAS,
*Circuit Judges*.

(Opinion Filed: November 26, 2018)

Matthew J. Archambeault [Argued]
Law Office of Michael J. Archambeault
1420 Walnut Street
Suite 1188
Philadelphia, PA 19102
            *Counsel for Petitioner*

Brianne W. Cohen
Lindsay Dunn [Argued]
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
            *Counsel for Respondent*

_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

Victor Manuel Frutis Salmoran seeks review of the determination of the Board of Immigration Appeals ("BIA" or "the Board") that he committed both an aggravated felony and a crime of child abuse pursuant to the Immigration and Nationality Act ("INA"), *see* 8 U.S.C. §§ 1101(a)(43)(I), 1227(a)(2)(E)(i) (2012). For the reasons below, we hold that a conviction under section 2C:24-4(b)(5)(b) of the New Jersey Statutes Annotated for possession of child pornography qualifies as a crime of child abuse, but does not qualify as an

aggravated felony relating to child pornography.[1] Accordingly, while Salmoran is removable, he may still file an application for cancellation of removal. We will therefore grant the petition for review in part, deny it in part, and remand the case for further proceedings consistent with this opinion.

## I.    Background

Salmoran is a native and citizen of Mexico who was granted lawful permanent resident status in 2004. In 2015, he pled guilty to a September 2012 violation of section 2C:24-4(b)(5)(b).[2] The statute provides that:

> Any person who knowingly possesses or knowingly views any photograph, film, videotape, computer program or file, video game

---

[1] Because Salmoran's offense occurred in September 2012, the version of section 2C:24-4(b)(5)(b) at issue in this case is that which was in effect from December 28, 2001 to June 30, 2013.

[2]    Whether Salmoran has any other criminal arrests or convictions is irrelevant to the legal questions before us because the U.S. Department of Homeland Security ("DHS") only charged him as removable in relation to the 2012 possession of child pornography offense. *See* Pet'r's Br. 4; Resp't's Br. 3 & n.2. *Compare* A.R. 112 ("The defendant has no history of prior delinquency or criminal activity . . . ."), *with* A.R. 118 (identifying arrests and a conviction relating to prostitution).

> or any other reproduction or reconstruction which depicts a child engaging in a prohibited sexual act or in the simulation of such an act, including on the Internet, is guilty of a crime of the fourth degree.

N.J. Stat. Ann. § 2C:24-4(b)(5)(b) (amended 2013 and 2017).[3]

In 2016, DHS initiated removal proceedings charging Salmoran as removable for having been convicted of: (1) the aggravated felony crime of sexual abuse of a minor; (2) an offense relating to child pornography; and (3) a crime of child abuse, child neglect, or child abandonment.[4] The Immigration Judge ("IJ") concluded that the possession of child pornography offense was not categorically an aggravated felony for sexual abuse of a minor, but was categorically an

---

[3] A child for the purposes of the statute is "any person under 16 years of age." *Id.* § 2C:24-4(b)(1).

[4] The INA includes as a class of deportable aliens "[a]ny alien who is convicted of an aggravated felony at any time after admission." 8 U.S.C. § 1227(a)(2)(A)(iii). The statute defines "aggravated felony" by reference to a list of offenses. *Id.* § 1101(a)(43). The INA also includes as a class of deportable aliens "[a]ny alien who at any time after admission is convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment." *Id.* § 1227(a)(2)(E)(i). While a conviction for either a crime of child abuse or aggravated felony renders a lawful permanent resident removable, only an aggravated felony conviction makes an individual ineligible for cancellation of removal. *See id.* § 1229b(a)(3), (b)(1)(C).

aggravated felony for child pornography and a crime of child abuse.

Salmoran appealed the IJ's decision and order removing him to Mexico. On de novo review, the Board agreed that a conviction under section 2C:24-4(b)(5)(b) "categorically constitutes a crime of child abuse, so as to subject him to removal on that basis." It therefore did not address whether the state conviction was categorically an aggravated felony for an offense relating to child pornography.

In his motion to reconsider, Salmoran requested that the BIA also determine his removability for having been convicted of an aggravated felony relating to child pornography because, but for the aggravated felony bar, he would be eligible for cancellation of removal. The BIA granted his request but ultimately rejected his argument that the state statute was broader than the federal offense. The Board consequently found that Salmoran was "statutorily precluded from applying for cancellation of removal under section 240A(a)(3) of the [INA]" and dismissed his appeal. This timely petition followed.[5]

## II.    Jurisdiction and Standard of Review

The BIA had jurisdiction pursuant to 8 C.F.R. §§ 1003.1(b)(3) and 1240.15, and it exercised jurisdiction over the

---

[5]    Salmoran has already been removed to Mexico. *See* Pet'r's Br. 8; Resp't's Br. 8 n.5. "[A]n alien's removal from the United States," however, "does not divest a federal court of appeals from considering the claims raised in a petition for review." *Bejar v. Ashcroft*, 324 F.3d 127, 132 (3d Cir. 2003).

motion to reconsider under 8 C.F.R. § 1003.2(b). We have appellate jurisdiction over final orders of removal under 8 U.S.C. § 1252(a)(1).[6]

"Where, as here, the BIA issues a written decision on the merits, we review its decision and not the decision of the IJ." *Mahn v. Att'y Gen.*, 767 F.3d 170, 173 (3d Cir. 2014) (quoting *Bautista v. Att'y Gen.*, 744 F.3d 54, 57 (3d Cir. 2014)). "[W]e review the BIA's legal determinations *de novo*, subject to *Chevron* principles of deference." *Denis v. Att'y Gen.*, 633 F.3d 201, 205–06 (3d Cir. 2011).

## III.  Discussion

The questions of whether the New Jersey child pornography conviction constitutes an aggravated felony or a crime of child abuse both require the application of the categorical approach.[7] *See, e.g.*, *Mondragon-Gonzalez v. Att'y*

---

[6]  Section 1252(a)(2)(C) strips courts of jurisdiction "to review an order to remove an alien who commits an aggravated felony," but we nonetheless retain jurisdiction "to hear 'constitutional claims and questions of law presented in petitions for review of final removal orders,' even for those aliens convicted of an aggravated felony." *Restrepo v. Att'y Gen.*, 617 F.3d 787, 790 (3d Cir. 2010) (quoting *Papageorgiou v. Gonzales*, 413 F.3d 356, 358 (3d Cir. 2005)); *see* 8 U.S.C. § 1252(a)(2)(C), (D).

[7]  There are departures to our presumptive application of the categorical approach, but none applies here. First, there is no dispute as to the indivisibility of the statute of conviction so as to warrant the use of the modified categorical approach. *See Descamps v. United States*, 570 U.S. 254, 261-62 (2013)

*Gen.*, 884 F.3d 155, 159-60 (3d Cir. 2018) (applying the categorical approach in a crime of child abuse case); *Singh v. Att'y Gen.*, 839 F.3d 273, 278 (3d Cir. 2016) (applying the categorical approach in an aggravated felony case). Under the categorical approach, "we look 'not to the facts of the particular prior case,' but instead to whether 'the state statute defining the crime of conviction' categorically fits within the 'generic' federal" offense. *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 186 (2007)). Only where "a conviction of the state offense '"necessarily" involved . . . facts equating to [the] generic [federal offense]'" is there a categorical match. *Id.* (quoting *Shepard v. United States*, 544 U.S. 13, 24 (2005)). The Supreme Court of the United States, however, has cautioned that this approach "is not an invitation to apply 'legal imagination' to the state offense; [rather] there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'" *Id.* at 191 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).

---

(describing a divisible statute as one that "comprises multiple, alternative versions of the crime"). Second, the terms of section 2C:24-4(b)(5)(b) do not "invite inquiry into the facts underlying the conviction at issue." *Singh v. Ashcroft*, 383 F.3d 144, 161 (3d Cir. 2004) (including as examples where the statute includes a qualifier like "in which the loss to the victim or victims exceeds $10,000" or specifies crimes "committed within the last two years").

## A. Aggravated Felony

### 1. Facial Overbreadth

As a threshold matter, in considering Salmoran's claim that the BIA erred in its aggravated felony determination, we note that *Chevron* deference is not implicated in our analysis. Under our precedent, *Chevron* deference is limited to the BIA's reasonable interpretations of the INA and does not extend to its categorical approach determinations. *Singh v. Att'y Gen.*, 677 F.3d 503, 508 (3d Cir. 2012). We have in some cases noted the "confusion surrounding the proper standard of review" with respect to "the role of *Chevron* deference in cases interpreting the [INA] generally, and the aggravated felony statute of 8 U.S.C. § 1101(a)(43) in particular." *Singh v. Ashcroft*, 383 F.3d at 150 (quoting *Patel v. Ashcroft*, 294 F.3d 465, 467 (3d Cir. 2002)). Indeed, there may be some open questions concerning *Chevron* deference to the BIA's interpretation of ambiguous terms as used in section 1101(a)(43). *See id.* at 151–52 ("[W]e . . . expressly reserve decision on whether some BIA interpretations of § 1101(a)(43) are entitled to deference.").

Any such concerns about deference generally, however, are not present in this case. Section 1101(a)(43)(I) incorporates by reference sections of Title 18 of the U.S. Code, and the BIA's interpretations of federal criminal provisions outside the INA are not entitled to deference. *See Francis v. Reno*, 269 F.3d 162, 168 (3d Cir. 2001); *accord Singh v. Gonzales*, 432 F.3d 533, 538 (3d Cir. 2006). Even if there were a question as to the interpretation of 18 U.S.C. § 2252 in this case, then, it would not be "necessary [or] appropriate to defer to the BIA's or IJ's interpretation." *Singh v. Ashcroft*, 383 F.3d at 151. Moreover, "we owe no deference to the BIA's

interpretation of a state criminal statute," which does not entail the BIA's special expertise and which the INA does not even incorporate by reference. *Javier v. Att'y Gen.*, 826 F.3d 127, 130 (3d Cir. 2016).

We therefore start on a blank slate in comparing the state statute of conviction and the federal offense. Salmoran's argument hinges in particular on the state statute's definition of "prohibited sexual act" as: sexual intercourse, anal intercourse, masturbation, bestiality, sadism, masochism, fellatio, cunnilingus, "[n]udity, if depicted for the purpose of sexual stimulation or gratification of any person who may view such depiction," or "[a]ny act of sexual penetration or sexual contact as defined in N.J.S.2C:14-1." N.J. Stat. Ann. § 2C:24-4(b)(1). Sexual contact, in turn, is defined as:

> an intentional touching by the victim or actor, either directly or through clothing, of the victim's or actor's intimate parts for the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying the actor. Sexual contact of the actor with himself must be in view of the victim whom the actor knows to be present . . . .

*Id.* § 2C:14-1(d). Intimate parts are "sexual organs, genital area, anal area, inner thigh, groin, buttock or breast of a person." *Id.* § 2C:14-1(e).

The federal analog to Salmoran's fourth-degree possession of child pornography conviction is found in 18 U.S.C. § 2252(a)(4)(B), a violation of which the INA lists as an aggravated felony. *See* 8 U.S.C. § 1101(a)(43)(I) (stating that "an offense described in section 2251, 2251A, or 2252 of

9

Title 18 (relating to child pornography)" is an aggravated felony). Section 2252 in relevant part renders it a punishable offense to:

> knowingly possess[], or knowingly access[] with intent to view, 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if—
>
> (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
>
> (ii) such visual depiction is of such conduct . . . .

18 U.S.C. § 2252(a)(4)(B).[8, 9] Sexually explicit conduct means actual or simulated "sexual intercourse, including genital-

---

[8] A minor is "any person under the age of eighteen years." *Id.* § 2256(1).

[9] As the IJ recognized, the federal offense's inclusion of interstate or foreign commerce element is of no moment for purposes of our analysis. *See Torres v. Lynch*, 136 S. Ct. 1619, 1623 (2016) (holding that a state crime qualifies as an aggravated felony under the INA if it "corresponds to a specified federal offense in all ways but one—namely, the state

10

genital, oral-genital, anal-genital, or oral-anal"; bestiality; masturbation; sadistic or masochistic abuse; or "lascivious exhibition of the genitals or pubic area of any person." *Id.* § 2256(2)(A).

The BIA determined that "there is no meaningful distinction between the statutory definitions" of "prohibited sexual act" used in the state statute and "sexually explicit conduct" used in the federal statute. We disagree and conclude that the plain language of section 2C:24-4(b)(5)(b) encompasses a broader range of conduct than its federal counterpart.

First, among the conduct that the state statute criminalizes, by means of its definition of "sexual contact," is the knowing possession of a visual depiction of an intentional touching, "either directly or through clothing," of the inner thigh, breasts, or buttocks by either the minor victim or adult actor "for the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying the actor." N.J. Stat. Ann. § 2C:14-1(d). By contrast, in terms of conduct other than sexual acts and sadistic or masochist abuse, the federal offense prohibits the "lascivious exhibition" of only the "genitals or pubic area of any person."[10]  18 U.S.C. §

---

crime lacks the interstate commerce element used in the federal statute to establish legislative jurisdiction").

[10]  We have explained that:

[A]s used in the child pornography statute, the ordinary meaning of the phrase "lascivious exhibition" means a depiction which displays or brings forth to view in order to attract notice to

11

2256(2)(A). Because the statute of conviction would then, for example, criminalize possession of a video depicting an adult actor intentionally touching the breasts of a minor victim for the purpose of sexually gratifying the actor, it does not categorically fall within the federal child pornography definition. *Cf. United States v. Gleich*, 397 F.3d 608, 614 (8th Cir. 2005) (concluding that "taking pictures of a non-pubic area such as the buttocks does not meet the definition of 'sexually explicit conduct,'" as set forth in 18 U.S.C. § 2256(2)(A)).

Second, Salmoran asserts that section 2C:24-4(b)(5)(b) is categorically over inclusive for another reason: the state statutory provision criminalizes "[n]udity, if depicted for the

> the genitals or pubic area of children, in order to excite lustfulness or sexual stimulation in the viewer. Such a definition does not contain any requirement of nudity . . . . Nor does such a definition contain or suggest a requirement that the contours of the genitals or pubic area be discernible or otherwise visible through the child subject's clothing.

*United States v. Knox*, 32 F.3d 733, 745–46 (3d Cir. 1994). "'[L]asciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or like minded pedophiles.' . . . [T]he focus must be on the *intended* effect, rather [than] the *actual* effect, on the viewer." *United States v. Larkin*, 629 F.3d 177, 184 (3d Cir. 2010) (alteration added) (quoting *United States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir. 1987)).

12

purpose of sexual stimulation or gratification of any person who may view such depiction," even if there is no accompanying depiction of a sexual act or exhibition of the genitals or pubic area. The BIA rejected this argument in part by stating:

> New Jersey's definition appears to be more specific than the federal definition, differentiating exhibition of the genitalia and nudity, and requiring more than simple nudity but rather nudity depicted for the purpose of sexual stimulation or gratification.– . . . [T]he Third Circuit . . . held in *United States v. Knox*, 32 F.3d 733 (3d Cir. 1994), that the inclusion of "lascivious exhibition of the genitals or pubic area of any person" in the federal definition is broader than a similar Pennsylvania definition which requires actual nudity. "Notably, nudity alone is not enough for 'lasciviousness,' since, as the Third Circuit noted, the phrase 'exhibition of the genitals or pubic area' in § 2256(2) is qualified by the term 'lascivious.'"

App. 7 (citation omitted) (quoting *Doe v. Chamberlin*, 139 F. Supp. 2d 637, 641 (M.D. Pa. 2001)).

The BIA's reasoning is flawed. Most importantly, the analysis fails to account for the express emphasis on "genitals or pubic area" contained in the federal definition. The state statute, meanwhile, applies to *any* nudity—and not necessarily that which shows genitals or the pubic area—depicted for the purpose of sexual stimulation or gratification. Furthermore, the statute of conviction's purpose element does not undercut Salmoran's contention that there are depictions criminalized by

13

the New Jersey statute that would not fall within the ambit of § 2252. Despite the BIA's statement, it need not be true that "images that depict nudity for the purpose of sexual stimulation or gratification under New Jersey law would necessarily depict lascivious exhibition of the *genitals* under the definition [at] 18 U.S.C. § 2256(2)(A)(v)." *Id.* (emphasis added).

The Government argues unpersuasively that the analysis this Court employs to determine whether there is "lascivious exhibition of the genitals or pubic area of any person," *see United States v. Villard*, 885 F.2d 117, 122 (3d Cir. 1989), means that depictions that contain other "hallmarks of lascivious conduct" may be criminalized even in the absence of a focus on the genitals or pubic area.[11] Resp't's Br. 30

---

[11] In *Villard*, we adopted the so-called *Dost* factors (taken from *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986)) "as a means of determining whether a genital exhibition is 'lascivious.'" 885 F.2d at 122. These factors are:

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
>
> 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
>
> 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
>
> 4) whether the child is fully or partially clothed, or nude;

(quoting *United States v. Larkin*, 629 F.3d 177, 182 (3d Cir. 2010)).  We did in *United States v. Larkin* conclude that two photographs that did not satisfy the first *Dost* factor of focusing on the minor's genitalia were nonetheless lascivious.  629 F.3d 177, 182-85 (3d Cir. 2010).  There is a distinction, however, between depictions where the *focus* is not on the genitals or pubic area and those that do not at all feature those regions— and in the photographs in *Larkin*, the minor is "completely nude."  *Id.* at 183, 185; *see id.* at 184 ("Nothing but B.L.'s entire nude body, with an emphasis on her breasts, is depicted in this photograph.  Although the genitals are visible because the child is naked, factor one is not present because the focus is not on the genitalia.").  Indeed, we expressly held in *Knox* that "the question whether the depiction at issue visually exhibits the genitals or pubic area is a threshold determination not necessarily guided by the *Dost* factors."  32 F.3d at 751; *see also United States v. McGrattan*, 504 F.3d 608, 613–14 (6th Cir. 2007) (considering a state statute that prohibited "all lewd exhibitions of nudity involving minors" and acknowledging that its application to "someone who possessed depictions of nudity which were lewd, but which did not involve the genitals" would be overbroad).  We therefore agree

> 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
>
> 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Id.*  "[N]o single factor should be given undue weight and . . . a depiction need not involve all the factors in order to be 'lascivious.'"  *Id.*

15

with Salmoran that the BIA's analysis as to overbreadth was erroneous.

## 2. Realistic Probability

Although we have determined that the language of section 2C:24-4(b)(5)(b) plainly encompasses a broader range of conduct than the federal offense, the Government contends that Salmoran must still identify "a decision demonstrating that the State applies N.J. Stat. Ann. § 2C:24-4(b)(5)(b) to images beyond those contemplated by its federal counterpart." Resp't's Suppl. Br. 3. Admittedly, this argument is not wholly baseless and finds some support in the language of *Duenas-Alvarez* that "[t]o show . . . realistic probability, an offender . . . . must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." 549 U.S. 183, 193 (2007); *see also Moncrieffe*, 569 U.S. at 205–06 (stating that if comparing "§ 1101(a)(43)(C), which refers to a federal firearms statute that contains an exception for 'antique firearm[s],'" with a "state firearms law that lacks such an exception," "a noncitizen would have to demonstrate that the State actually prosecutes the relevant offense in cases involving antique firearms" to "defeat the categorical comparison in this manner").

Indeed, we recognize that said language has caused some confusion in the courts of appeals. For example, the United States Court of Appeals for the Fifth Circuit, like the BIA, requires proof of actual prosecution even where the crime of conviction contains broader language. *See, e.g.*, *United States v. Castillo-Rivera*, 853 F.3d 218, 223 (5th Cir. 2017) ("There is no exception to the actual case requirement articulated in *Duenas-Alvarez* where a court concludes a state

16

statute is broader on its face. Indeed, the Court in *Duenas-Alvarez* emphasized that a defendant must 'at least' point to an actual state case . . . ." (quoting *Duenas-Alvarez*, 549 U.S. at 193)); *see also Matter of Ferreira*, 26 I. & N. Dec. 415, 420–21 (B.I.A. 2014) ("[T]he import of *Moncrieffe* and *Duenas-Alvarez* is that even where a State statute on its face covers a type of object or substance not included in a Federal statute's generic definition, there must be a realistic probability that the State would prosecute conduct falling outside the generic crime in order to defeat a charge of removability.").

Our Court's precedent, however, takes the alternative approach. In *Singh v. Attorney General*, we highlighted that the relevant elements of the statutes at issue in *Moncrieffe* and *Duenas-Alvarez* were identical.[12] 839 F.3d at 286 n.10. But

---

[12] In *Moncrieffe*, the Court compared a Georgia crime of conviction for possession of marijuana with intent to distribute to a federal drug trafficking crime. 569 U.S. at 188–89. The petitioner there argued that the state statute, which "punishe[d] all marijuana distribution without regard to the amount or remuneration," was not categorically an aggravated felony because it proscribed conduct described by both 18 U.S.C. § 841's felony and misdemeanor provisions. *Id.* at 189–90.

In *Duenas-Alvarez*, the petitioner was convicted of violating a California statutory provision that criminalizes the conduct of any person who drives or takes another's vehicle (without consent and with intent to deprive the owner of title or possession) "or any person who is a party or an accessory to or an accomplice in the driving or unauthorized taking or stealing." 549 U.S. at 187 (emphasis omitted) (quoting Cal. Veh. Code Ann. § 10851(a) (West 2000)). He argued that

17

where "the elements of the crime of conviction are not the same as the elements of the generic federal offense," we explained, we believe "the 'realistic probability' language" (or, the "'realistic probability' inquiry") of *Moncrieffe* is "simply not meant to apply." *Id.*; *see id.* at 286 (holding that the BIA "erred in conducting a 'realistic probability' inquiry" in ascertaining whether a Pennsylvania drug conviction was an aggravated felony); *see also Swaby v. Yates*, 847 F.3d 62, 66 (1st Cir. 2017) ("The state crime at issue clearly does apply more broadly than the federally defined offense. Nothing in Duenas–Alvarez, therefore, indicates that this state law crime may be treated as if it is narrower than it plainly is."); *Ramos v. Att'y Gen.*, 709 F.3d 1066, 1071–72 (11th Cir. 2013) (explaining that *Duenas-Alvarez* does not control where the statute's language itself "creates the 'realistic probability' that a state would apply the statute to conduct beyond the generic definition"); *United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007) ("Where, as here, a state statute explicitly defines a crime more broadly than the generic definition, no 'legal imagination' is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime." (citation omitted) (quoting *Duenas-Alvarez*, 549 U.S. at 193)).

    *Singh v. Attorney General*, therefore, forecloses the Government's contention and prevents placing an undue

California caselaw "makes a defendant criminally liable for conduct that the defendant did not intend, not even as a known or almost certain byproduct of the defendant's intentional acts," and application of the state statute therefore "creates a subspecies of the Vehicle Code section crime that falls outside the generic definition of 'theft.'" *Id.* at 191, 194.

burden on petitioners of identifying cases of actual prosecution where the statute expressly authorizes the state government to enforce broader conduct.[13] In these situations, it is a matter of semantics as to whether we state that the realistic probability inquiry is not meant to apply, *see Singh v. Att'y Gen.*, 839 F.3d at 286 n.10, or the realistic probability requirement is necessarily satisfied because "legal imagination" is not needed,

---

[13] Despite the Government's argument to the contrary, *Singh*'s application of the modified categorical approach and the controlled substance schedule context do not provide bases to distinguish when proof of actual prosecution is required for the realistic probability inquiry. *See Singh v. Att'y Gen.*, 839 F.3d at 279 n.2 ("The modified categorical approach is not distinct from the categorical approach, but rather a 'tool for implementing the categorical approach.'" (quoting *Descamps*, 570 U.S. at 262)).

Moreover, our opinion in *Lewin v. Attorney General*, 885 F.3d 165 (3d Cir. 2018), is consistent with the reasoning in *Singh*. In *Lewin*, we rejected the petitioner's argument that his New Jersey conviction for receipt of stolen property was broader than the generic federal offense of receiving stolen property. *Id.* at 170. The petitioner challenged "the sufficiency of the mens rea element of [the state] offense," *id.* at 167, but the statute of conviction "refer[red] to a specific defendant's knowledge or belief," which aligned with the intent element of the generic federal offense, *see id.* at 169-70. The elements of the statute of conviction and the generic offense were thus the same; our note that "[a]t most, [the petitioner] raise[d] a theoretical" claim that does not satisfy the *Moncrieffe* realistic probability requirement was appropriate in that context. *Id.* at 170.

19

*see Grisel*, 488 F.3d at 850. Here, because section 2C:24-4(b)(5)(b) plainly encompasses more conduct than its federal counterpart, Salmoran does not need to identify cases in which New Jersey actually prosecuted overbroad conduct. The statute of conviction does not constitute an aggravated felony.

**B.      Crime of Child Abuse**

Having concluded that section 2C:24-4(b)(5)(b) does not qualify as an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(I), we next consider whether Salmoran is nevertheless removable because the conviction constituted a crime of child abuse.

The INA does not define "crime of child abuse," nor is the phrase's meaning as used in the statute "plain and unambiguous"; as a result, under *Chevron*, we must defer to the BIA's interpretation of the phrase if it is "based on a permissible construction of the statute." *Mondragon-Gonzalez*, 884 F.3d at 158 (quoting *Florez v. Holder*, 779 F.3d 207, 211 (2d Cir. 2015)). We recently addressed that precise issue in *Mondragon-Gonzalez*, in which we held that the BIA's broad interpretation of a crime of child abuse is reasonable and is owed deference.[14] *Id.* at 158–59. The agency defines "crime of child abuse" as:

> any offense involving an intentional, knowing, reckless, or criminally negligent act or omission

---

[14]      While we defer to the Board's interpretation of "crime of child abuse," we owe no deference to—and review de novo—its categorical approach determination. *See Singh v. Att'y Gen.*, 677 F.3d at 508.

that constitutes maltreatment of a child or that impairs a child's physical or mental well-being, including sexual abuse or exploitation. At a minimum, this definition encompasses convictions for offenses involving the infliction on a child of physical harm, even if slight; mental or emotional harm, including acts injurious to morals; sexual abuse, including direct acts of sexual contact, but also including acts that induce (or omissions that permit) a child to engage in prostitution, pornography, or other sexually explicit conduct; as well as any act that involves the use or exploitation of a child as an object of sexual gratification . . . .

*Matter of Velazquez-Herrera*, 24 I. & N. Dec. 503, 512 (B.I.A. 2008); *see also Matter of Soram*, 25 I. & N. Dec. 378, 381 (B.I.A. 2010) (holding that "proof of actual harm or injury to the child" is not required).

The conviction at issue here categorically matches the part of the BIA's definition of child abuse that includes "any act that involves the use or exploitation of a child as an object of sexual gratification." *Matter of Velazquez-Herrera*, 24 I. & N. Dec. at 512. Although Salmoran argues that possession of child pornography does not entail exploitation of the child, this position is untenable. As the Supreme Court has noted, "[t]he harms caused by child pornography . . . are . . . extensive because child pornography is 'a permanent record' of the depicted child's abuse, and 'the harm to the child is exacerbated by [its] circulation.'" *Paroline v. United States*, 572 U.S. 434, 440 (2014) (quoting *New York v. Ferber*, 458 U.S. 747, 759 (1982)); *cf. Osborne v. Ohio*, 495 U.S. 103, 111 (1990) (noting that the existence of the pornography "haunt[s]

21

the children in years to come"). Possession of child pornography thus perpetuates the abuse of that child and amounts to "use or exploitation" because of the content, purpose, and effect of possessing the images. Salmoran's state offense therefore falls squarely within the BIA's definition of the generic offense.

## IV.  Conclusion

While Salmoran is removable for having committed a crime of child abuse,[15] he may nevertheless file an application for cancellation of removal because his state child pornography conviction does not constitute an aggravated felony. We will accordingly grant the petition for review in part, deny it in part, and remand for further proceedings to allow Salmoran the opportunity to apply for cancellation of removal.

---

[15]    We consequently decline Salmoran's request to order DHS to facilitate his return to the United States.