2024 IL App (1st) 231138-U

No. 1-23-1138

Order filed September 20, 2024

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 15 CR 19416 |
| | ) | |
| FADEEL SHUHAIBER, | ) | Honorable |
| | ) | John T. Gallagher, |
| Defendant-Appellant. | ) | Judge presiding. |

_____

JUSTICE NAVARRO delivered the judgment of the court.
Presiding Justice Mikva and Justice Mitchell concurred in the judgment.

**ORDER**

¶ 1     *Held*:   We affirm the circuit court's dismissal of defendant's postconviction petition where he failed to make a substantial showing that his trial counsel provided ineffective assistance.

¶ 2     Following defendant Fadeel Shuhaiber's guilty plea to one count of possession of child pornography, the trial court sentenced him to five years' imprisonment. Thereafter, Shuhaiber filed a *pro se* postconviction petition and his appointed attorney filed a supplemental petition, together arguing that his trial counsel provided ineffective assistance by failing to accurately inform him of

the immigration consequences of his guilty plea. During postconviction proceedings, Shuhaiber was deported to Lebanon, and upon the State's motion during second-stage proceedings, the circuit court dismissed his petition. Shuhaiber now appeals that dismissal and contends the court erred by dismissing his petition where it made a substantial showing that his trial counsel provided ineffective assistance by failing to accurately inform him of the immigration consequences of pleading guilty to possession of child pornography. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Shuhaiber was born in 1985 to Lebanese-born Palestinian refugees. The record lists his place of birth in various locations, including Pakistan, the United Arab Emirates and Israel. But, according to Shuhaiber's own testimony before an immigration judge in deportation proceedings, he was born in the United Arab Emirates. At some point during his childhood, he and his family moved to Lebanon, where he eventually attended college. In June 2014, Shuhaiber entered the United States on an F-1 student visit to attend a master's program. The record is inconsistent about when his student visa was set to expire. In one document from the United States Department of Homeland Security, his visa was set to expire in February 2015. But, according to a motion to change venue in his deportation proceedings, Shuhaiber claimed his student visa was set to expire in March 2017.

¶ 5      In November 2015, a grand jury indicted Shuhaiber on 12 counts of dissemination of child pornography, all Class X felonies, and 12 counts of possession of child pornography, all Class 2 felonies. In relevant part, Count 13 charged Shuhaiber with the offense of possession of child pornography in that he, with knowledge of the nature or content thereof, possessed a moving depiction by computer of a child whom he knew or reasonably should have known to be under 13

years old where such child was actually or by simulation engaged in an act of sexual penetration or conduct with another person or animal. See 720 ILCS 5/11-20.1(a)(6)(i)/(c-5) (West 2014).

¶ 6  In June 2017, Shuhaiber requested an Illinois Supreme Court Rule 402 (eff. July 1, 2012) conference to determine if a plea bargain could be reached. The trial court held the conference, but the proceedings from the conference are not in the record. However, following the conference, in the court's criminal disposition sheet, it noted that "[Shuhaiber] [is] not a citizen" and that it offered him five years' imprisonment in return for a guilty plea.

¶ 7  Two months later, Shuhaiber's trial counsel indicated that Shuhaiber wished to accept the trial court's plea offer, which was to Count 13 for possession of child pornography. Before accepting his guilty plea, the court informed him that, if he was not a United States citizen, he "may[ ]" be subject to deportation because of the guilty plea. When the court asked Shuhaiber if he understood the potential immigration consequences, he responded affirmatively. The court admonished Shuhaiber about the charge and potential penalties, and it subsequently accepted his guilty plea. The court then sentenced Shuhaiber to five years' imprisonment, and the State nol-prossed the remaining charges against him.

¶ 8  In January 2018, the Department of Homeland Security informed Shuhaiber that he was subject to deportation for his conviction and for overstaying his student visa. According to the Department of Homeland Security, Shuhaiber had committed a crime involving moral turpitude and committed an aggravated felony, as defined by the Immigration and Nationality Act (INA) (see 8 U.S.C. § 1227 (2012)), based on the offense being "relat[ed] to child pornography." However, a subsequent document from the United States Department of Justice's Executive Office for Immigration Review charged Shuhaiber with committing an aggravated felony, as defined by the INA, based on the offense being a "murder, rape, or sexual abuse of a minor." In response to

the deportation proceedings, Shuhaiber filed applications for asylum, withholding of deportation and protection under the United Nations Convention Against Torture.

¶ 9 In August 2019, an immigration judge denied Shuhaiber's applications and ordered that he be deported to Palestine, Lebanon or Israel. In that decision, the immigration judge noted that Shuhaiber had been charged with committing an aggravated felony, as defined by the INA, based on the offense being a "murder, rape, or sexual abuse of a minor." The immigration judge then found Shuhaiber had been convicted of an aggravated felony. Shuhaiber subsequently filed a motion to reconsider the deportation order, but the immigration judge denied his request.

¶ 10 In October 2019, Shuhaiber filed a *pro se* postconviction petition, asserting a claim of ineffective assistance of trial counsel under *Padilla v. Kentucky*, 559 U.S. 356 (2010), for failing to accurately inform him of the immigration consequences of his guilty plea to possession of child pornography. The petition asserted that Shuhaiber asked his trial counsel if counsel could negotiate a plea agreement that did not include pleading guilty to possession of child pornography because preserving his "legal status" in the United States was "the most important consideration" for him. Counsel, however, could only negotiate a plea agreement for that offense. The petition alleged that when Shuhaiber and counsel discussed the immigration consequences of such a plea, counsel only told him that he " 'could' " be deported despite the offense being considered an aggravated felony under the INA and subject to mandatory deportation. According to the petition, had Shuhaiber's counsel accurately advised him of the immigration consequences, he would not have pled guilty. The petition included several documents relating to Shuhaiber's deportation proceedings.

¶ 11 By January 2020, the circuit court advanced Shuhaiber's petition to second-stage postconviction proceedings and appointed an assistant public defender to represent him. At this point, Shuhaiber remained in the custody of the Illinois Department of Corrections. But while

Shuhaiber's petition remained in second-stage proceedings, the United States Immigration Customs and Enforcement took Shuhaiber into custody. By July 2021, Immigration Customs and Enforcement had deported him to Lebanon.

¶ 12    Nearly a year later, Shuhaiber's postconviction counsel filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) and a supplemental petition. The supplemental petition reiterated the claim that Shuhaiber's trial counsel had been ineffective by incorrectly informing Shuhaiber of the immigration consequences of his guilty plea under *Padilla*. The supplemental petition posited that, had trial counsel correctly informed Shuhaiber that pleading guilty to possession of child pornography would result in mandatory deportation, he would have rejected the plea offer and proceeded to trial. The supplemental petition included an affidavit signed by Shuhaiber confirming the allegations. In the affidavit, as it related to rejecting the plea offer and proceeding to trial, Shuhaiber stated: "Had I been properly informed by my attorney of the immigration consequences of the plea offer, I would not have pleaded guilty. I would have insisted on going to trial."

¶ 13    In response, the State filed a motion to dismiss, arguing that Shuhaiber's petition failed to substantially show that his trial counsel provided ineffective assistance. In June 2023, the circuit court granted the State's motion, stating that it was not convinced that Shuhaiber would have proceeded to trial "if he knew for a fact he would have been deported." Additionally, the court did not find that trial counsel's performance was deficient because counsel noted the possibility of deportation if Shuhaiber pled guilty.

¶ 14    This appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16    Shuhaiber contends that the circuit court erred in dismissing his postconviction petition where it made a substantial showing that his trial counsel was ineffective for failing to inform him that he would be subject to mandatory deportation by pleading guilty to possession of child pornography.

¶ 17    As an initial matter, before delving into the merits of Shuhaiber's contention, we reiterate that he has already been deported to Lebanon. Although the State has not argued that Shuhaiber's appeal is moot, we briefly note that his appeal is not moot because successful postconviction proceedings would result in his conviction for possession of child pornography being vacated, which has the potential, even if remote, to have collateral immigration consequences for him. See *People v. Bystrek*, 2019 IL App (1st) 180262-U, ¶¶ 20-21.

¶ 18    We now turn to the merits of Shuhaiber's contention under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)), which provides a three-stage process for a defendant who alleges that he has suffered a substantial deprivation of his constitutional rights. *People v. Cotto*, 2016 IL 119006, ¶ 26. At the second stage of proceedings, where this case remains, the State has the option to answer the petition or move to dismiss the petition. *People v. Dupree*, 2018 IL 122307, ¶ 28. If the State chooses the latter, the circuit court must determine whether to grant the motion or deny the motion, thereby allowing the petition to advance to a third-stage evidentiary hearing. *Id.* "The dismissal of a postconviction petition is warranted at the second stage of the proceedings only when the allegations in the petition, liberally construed in light of the trial record, fail to make a substantial showing of a constitutional violation." *People v. Agee*, 2023 IL 128413, ¶ 69. A " 'substantial showing' *** [citation] is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing, would entitle petitioner to relief." (Emphasis in original.) *People v. Domagala*, 2013 IL 113688, ¶ 35.

- 6 -

The defendant bears the burden to make the substantial showing. *Id.* During second-stage proceedings, the circuit court must accept all factual allegations not rebutted by the trial record as true (*Agee*, 2023 IL 128413, ¶ 69), and it may not engage in fact-finding or make credibility determinations. *Dupree*, 2018 IL 122307, ¶ 29. We review the court's dismissal at the second stage *de novo*. *Id.*

¶ 19    As Shuhaiber's petition claimed that his trial counsel was ineffective, he must satisfy the standard articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *Dupree*, 2018 IL 122307, ¶ 44. Under this standard, his petition must make a substantial showing that his trial counsel's performance was deficient and the deficiency prejudiced him. *Id.* Both prongs of the *Strickland* test must be satisfied for Shuhaiber's ineffective assistance claim to prevail. *People v. Cherry*, 2016 IL 118728, ¶ 24.

¶ 20                              A. Trial Counsel's Performance

¶ 21    We begin by determining whether Shuhaiber's petition made a substantial showing that his trial counsel performed deficiently by telling him that he could be deported because of his guilty plea to the offense of possession of child pornography rather than telling him he was subject to mandatory deportation.

¶ 22    "The weight of prevailing professional norms supports the view that counsel must advise her client regarding the deportation risk" of entering a guilty plea. *Padilla*, 559 U.S. at 367. This requirement does not differentiate between counsel affirmatively misadvising a client or failing to advise the client altogether. *Id.* at 370. And thus, "[i]t is quintessentially the duty of counsel to provide her client with available advice about an issue like deportation and the failure to do so clearly satisfies the first prong of the *Strickland* analysis." (Internal quotation marks omitted.) *Id.* at 371. Under the INA, there are broad categories of "[c]riminal offenses" that result in mandatory

deportation for noncitizens, such as "[c]rimes of moral turpitude" and an "[a]ggravated felony." 8 U.S.C. § 1227(a)(2)(A)(i), (iii) (2012). Additionally, under the INA, there are more specific types of offenses that are deemed deportable, such as ones involving "[c]ontrolled substances" and "[c]ertain firearm offenses." *Id.* § 1227(a)(2)(B), (C).

¶ 23    In *Padilla*, 559 U.S. at 359, before pleading guilty to transporting a large quantity of marijuana, the defendant's trial counsel allegedly told the defendant, who was not a United States citizen, he did not have to worry about being deported because he had lived in the United States for a long time. Following the guilty plea, the defendant faced deportation proceedings. *Id.* In analyzing his claim of ineffective assistance of counsel for the incorrect advice about the immigration consequences of his guilty plea, the United States Supreme Court observed that section 1227(a)(2)(B)(i) of Title 8 of the United States Code (8 U.S.C. § 1227(a)(2)(B)(i) (2012)), which is under the header of "[c]ontrolled substances," "specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses." *Padilla*, 559 U.S. at 368. The Court noted that the defendant's trial counsel could have simply read the text of section 1227(a)(2)(B)(i), which specifically involved controlled substances convictions rather than "some broad classification of crimes," and determined that the defendant's guilty plea would result in his mandatory deportation. *Id.* Because "the terms of the relevant immigration statute [were] succinct, clear, and explicit in defining the removal consequence for [the defendant's] conviction," his trial "counsel's advice was incorrect." *Id.* at 368-69. And in cases where a conviction makes a defendant "subject to automatic deportation," trial counsel must advise the defendant accordingly. *Id.* at 360.

¶ 24    In a concurrence, Justice Alito observed that immigration law is "quite complex." *Id.* at 377 (Alito, J., concurring). He noted that " '[m]ost crimes affecting immigration status are not

specifically mentioned by the [INA], but instead fall under a broad category of crimes, such as *crimes involving moral turpitude* or *aggravated felonies*.' " (Emphasis in original) *Id.* at 377-78 (quoting M. Garcia & L. Eig, CRS Report for Congress, Immigration Consequences of Criminal Activity (Sept. 20, 2006) (summary)). Because of this, Justice Alito asserted that "determining whether a particular crime is an 'aggravated felony' or a 'crime involving moral turpitude ***' is not an easy task," especially because several different agencies and courts are tasked with interpreting the INA. *Id.* at 378. He posited that a "[d]efense counsel who consults a guidebook on whether a particular crime is an 'aggravated felony' will often find that the answer is not 'easily ascertained.' " *Id.* Justice Alito further observed that determining whether an offense involved moral turpitude was "no easier." *Id.* at 379.

¶ 25    In response to Justice Alito's concurrence, the majority agreed that immigration law is "complex," resulting in "numerous situations in which the deportation consequences of a particular plea are unclear or uncertain." *Id.* at 369 (majority opinion). "When the law is not succinct and straightforward (as it is in many of the scenarios posited by Justice ALITO), a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* Yet, the majority asserted that, "when the deportation consequence is truly clear, *** the duty to give correct advice is equally clear." *Id.* And, in the case before it, the majority concluded that the defendant's trial counsel undoubtedly gave the defendant incorrect advice where counsel unequivocally told the defendant he did not have to worry about being deported. *Id.*

¶ 26    In *People v. Valdez*, 2016 IL 119860, our supreme court analyzed *Padilla*. There, a defendant who pled guilty to burglary later claimed that his trial counsel was ineffective for failing to inform him of the immigration consequences of his guilty plea. *Id.* ¶¶ 5-9. In analyzing the

claim, the court observed that the INA "sets forth general categories of offenses, including crimes involving moral turpitude [citation] and aggravated felonies [citation], which may or may not include burglary." *Id.* ¶ 20 (citing 8 U.S.C. § 1227(a)(2)(A)(i), (iii) (2012)). Because this section of the INA did not explicitly list burglary as a deportable offense, the court concluded that the immigration consequences of such a conviction were not succinct or straightforward. *Id.* ¶¶ 20, 22. The court asserted that "*Padilla* strongly suggests that where a crime falls within a 'broad classification' of offenses, such as crimes involving moral turpitude, the law is not 'succinct and straightforward.' " *Id.* ¶ 22 (quoting *Padilla*, 559 U.S. at 368-69). In turn, "where the face of the statute does not succinctly, clearly, and explicitly indicate that a conviction subjects a defendant to mandatory deportation, counsel need only advise a defendant that his plea 'may' have immigration consequences." *Id.* But because the defendant's trial counsel failed to inform him about any immigration consequences of his guilty plea, our supreme court found that his trial counsel performed deficiently. *Id.* ¶ 27.

¶ 27 With *Padilla* and *Valdez* in mind, we turn to the instant case, where Shuhaiber pled guilty to possession of child pornography under section 11-20.1(a)(6)(i) of the Criminal Code of 2012 (Code) (720 ILCS 5/11-20.1(a)(6)(i) (West 2014)). As previously noted, the INA lists multiple general categories of offenses that are deemed deportable, including an "[a]ggravated felony." See 8 U.S.C. § 1227(a)(2)(A)(iii) (2012). When a noncitizen is "convicted of an aggravated felony[, he] shall be conclusively presumed to be deportable from the United States" and subject to expedited deportation proceedings. *Id.* § 1228(a)(3)(A), (c). What constitutes an "[a]ggravated felony" under section 1227(a)(2)(A)(iii) is not defined by that section. Rather, section 1101(a)(43) defines the term "aggravated felony." *Id.* § 1101(a)(43). Section 1101(a)(43) lists several offenses, such as "murder" and "rape" (*id.* § 1101(a)(43)(A)), and it lists general statutory references to the

federal criminal code, including "an offense described in section 2251, 2251A, or 2252 of Title 18 (relating to child pornography)." *Id.* § 1101(a)(43)(I).

¶ 28    In turn, sections 2251 and 2251A of Title 18 of the United States Code (18 U.S.C. §§ 2251, 2251A (2012)), prohibit activities relating to the sexual exploitation of children, and the selling or buying of children for use in child pornography, respectively. More relevant to the instant case, section 2252 prohibits a wide variety of activities relating to material involving the sexual exploitation of minors, including the transportation of child pornography across state lines as well as the sale, or possession with intent to sell, of child pornography. *Id.* § 2252. Additionally, section 2252(a)(4)(B) prohibits simple possession of child pornography. *Id.* § 2252(a)(4)(B). Although section 2252(a)(4)(B) contains an interstate commerce jurisdictional hook, the definition of an aggravated felony in the INA "applies to an offense described" in the list of offenses whether it violates federal, state or foreign law. 8 U.S.C. § 1101(a)(43) (2012). This indistinction between the source of the law violated demonstrates that "Congress meant the term 'aggravated felony' to capture serious crimes regardless of whether they are prohibited by federal, state, or foreign law." *Torres v. Lynch*, 578 U.S. 452, 460 (2016). And thus, "[a] state offense counts as a [section] 1101(a)(43) 'aggravated felony' when it has every element of a listed federal crime except one requiring a connection to interstate or foreign commerce." *Id.* at 452.

¶ 29    However, contrary to Shuhaiber's argument, merely because the INA defines an aggravated felony as including an offense "relating to child pornography" (8 U.S.C. § 1101(a)(43)(I)), and section 2252(a)(4)(B) of the federal criminal code (18 U.S.C. § 2252(a)(4)(B) (2012)) prohibits simple possession of child pornography, that does not automatically mean what Shuhaiber pled guilty to is an aggravated felony. Determining whether a state law offense constitutes an aggravated felony for purposes of the INA requires an examination of "whether the

state offense is comparable to an offense listed in the INA." *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013). This is called the " 'categorical approach.' " *Id.* Under this approach, courts do not look at the facts of the specific case but rather "whether 'the state statute defining the crime of conviction' categorically fits within the 'generic' federal definition of a corresponding aggravated felony." *Id.* (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 186 (2007)). And "[b]y 'generic,' " the Supreme Court "mean[t] the offenses must be viewed in the abstract, to see whether the state statute shares the nature of the federal offense that serves as a point of comparison." *Id.*

¶ 30     For example, in *Salmoran v. Attorney General of the United States*, 909 F.3d 73, 75-76 (3d Cir. 2018), the Third Circuit Court of Appeals examined whether a New Jersey state conviction for possession of child pornography constituted an aggravated felony under the INA. In analyzing this question, the court used the categorical approach and undertook a detailed analysis in comparing the New Jersey state statute, including references to various statutory definitions, to the federal counterpart under section 2252(a)(4)(B). *Id.* at 78. Ultimately, the court concluded that the New Jersey state statute "encompasse[d] a broader range of conduct than its federal counterpart," and therefore, the defendant's conviction under the New Jersey state statute did not constitute an aggravated felony under the INA. *Id.* at 78, 82. Additionally, in *Chavez-Solis v. Lynch*, 803 F.3d 1004, 1006-07 (9th Cir. 2015), the Ninth Circuit Court of Appeals examined whether a California state conviction for possession of child pornography constituted an aggravated felony under the INA. In analyzing this question, the court used the categorical approach and undertook a detailed analysis in comparing the California state statute, including references to various statutory definitions, to the federal counterpart under section 2252(a)(4)(B). *Id.* at 1007-09. Ultimately, the court concluded that the California state statute was "categorically broader" than its federal

counterpart, and therefore, the defendant's conviction under the California state statute did not constitute an aggravated felony under the INA. *Id.* at 1008, 1012-14.

¶ 31    As illustrated by *Salmoran* and *Chavez-Solis*, determining whether Shuhaiber's conviction for possession of child pornography under section 11-20.1(a)(6)(i) of the Code (720 ILCS 5/11-20.1(a)(6)(i) (West 2014)) constitutes an aggravated felony for purposes of the INA requires using the categorical approach and undertaking a detailed analysis of the Illinois statute, including references to various statutory definitions, and of the federal counterpart under section 2252(a)(4)(B). That is not to say that Shuhaiber's conviction for possession of child pornography under Illinois law did not constitute an aggravated felony. See *Serrato-Navarrete v. Holder*, 601 F. App'x 734, 735-37 (10th Cir. 2015) (using the categorical approach and holding that a defendant's conviction in Colorado for possession of child pornography was an aggravated felony under the INA, specifically as described in section 2252(a)(4)(B)). Rather, unlike *Padilla*, which required a straightforward application of section 1227 (8 U.S.C. § 1227 (2012)), determining whether Shuhaiber's conviction for possession of child pornography constitutes an aggravated felony is anything but succinct and straightforward.

¶ 32    As exemplified by the foregoing, there are multiple steps necessary for a trial counsel to determine whether a conviction for possession of child pornography under section 11-20.1(a)(6)(i) of the Code (720 ILCS 5/11-20.1(a)(6)(i) (West 2014)) constitutes an aggravated felony under the INA. First, counsel must look at section 1227, specifically section 1227(a)(2)(A)(iii), which makes an aggravated felony a deportable offense. 8 U.S.C. § 1227(a)(2)(A)(iii) (2012). Second, counsel must look beyond section 1227 and consult the definition of aggravated felony. See 8 U.S.C. § 1101(a)(43) (2012). Third, counsel must find the subsection referring to offenses "relating to child pornography." See *id.* § 1101(a)(43)(I). But because this subsection says offenses "relating to child

- 13 -

pornography," and not "possession of child pornography," the fourth step requires counsel to review each referenced section of the federal criminal code. See 18 U.S.C. §§ 2251, 2251A, 2252 (2012). And even then, the answer is not clear. As it relates to section 2252, to find the offense best described as prohibiting simple possession of child pornography, counsel must review several subsections before locating section 2252(a)(4)(B). See *id.* § 2252(a)(4)(B).

¶ 33 But still, trial counsel's work is not finished by locating section 2252(a)(4)(B). As demonstrated by *Salmoran* and *Chavez-Solis*, merely because section 2252(a)(4)(B) prohibits possession of child pornography, counsel still must use the categorical approach and compare the elements of section 11-20.1(a)(6)(i) of the Code (720 ILCS 5/11-20.1(a)(6)(i) (West 2014)) to section 2252(a)(4)(B), which is not an easy task. Simply put, determining whether Shuhaiber's conviction for possession of child pornography under section 11-20.1(a)(6)(i) of the Code (720 ILCS 5/11-20.1(a)(6)(i) (West 2014)) constitutes an aggravated felony for purposes of the INA is not succinct and straightforward. Under the circumstances, Shuhaiber's trial counsel was required only to provide him a general warning of the potential immigration consequences of his guilty plea to the offense. See *Padilla*, 559 U.S. at 369 ("When the law is not succinct and straightforward *** , a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences."); *Valdez*, 2016 IL 119860, ¶ 26 (concluding that trial "counsel was required to give [the] defendant only a general warning of the possibility of immigration consequences" when the immigration consequences for his burglary conviction were not succinct and straightforward).

¶ 34 What's more, although, on appeal, Shuhaiber's asserts that his conviction was an aggravated felony as being "relat[ed] to child pornography," he was not even deported based on committing this type of alleged aggravated felony. Although one immigration document from the

- 14 -

United States Department of Homeland Security asserted that he committed an aggravated felony based on the offense being "relat[ed] to child pornography," another document from the United States Department of Justice Executive Office for Immigration Review asserted that he committed an aggravated felony based on the offense being a "murder, rape, or sexual abuse of a minor" under section 1101(a)(43)(A) (8 U.S.C. § 1101(a)(43)(A) (2012)). And critically, the immigration judge's decision noted that he had been charged with committing an aggravated felony based on the offense being a "murder, rape, or sexual abuse of a minor," and the immigration judge later found he had been convicted of an aggravated felony.

¶ 35 Regardless, as the immigration consequences for Shuhaiber's guilty plea to possession of child pornography were not succinct and clear, trial counsel provided effective assistance by informing Shuhaiber that he could be deported because of his guilty plea. See *Padilla*, 559 U.S. at 369; *Valdez*, 2016 IL 119860, ¶ 26. Shuhaiber's petition has therefore failed to make a substantial showing that his trial counsel performed deficiently, and thus, his ineffective assistance of counsel claim fails. See *Cherry*, 2016 IL 118728, ¶ 24 (asserting that both prongs of the *Strickland* test must be satisfied). Consequently, the circuit court properly granted the State's motion to dismiss Shuhaiber's petition.

¶ 36                                III. CONCLUSION

¶ 37 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 38 Affirmed.