PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2274
_____

GURPREET SINGH,
                    Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
                    Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A060-605-541
(U.S. Immigration Judge: Honorable Andrew Arthur)
_____

Argued: February 29, 2016

Before:  AMBRO, JORDAN, and SCIRICA, *Circuit Judges*.

(Filed:  October 6, 2016)

Daniel B. Conklin, Esq.
Craig R. Shagin, Esq. [ARGUED]
The Shagin Law Group
120 South Street
The Inns of St. Jude
Harrisburg, PA 17101
        *Counsel for Petitioner*

Elizabeth R. Chapman, Esq. [ARGUED]
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
        *Counsel for Respondent*

_____

OPINION OF THE COURT
_____

**SCIRICA**, *Circuit Judge*

This immigration case concerns whether Gurpreet Singh's conviction under 35 P.S. § 780-113(a)(30) was an aggravated felony under the Immigration and Nationality Act (INA), which would make him ineligible for discretionary relief from removal from the United States. We will grant the petition for review, vacate the opinion of the Board of

Immigration Appeals (BIA), and remand to the BIA for further proceedings.

## I.

## A.

Under the INA, "[a]ny alien who is convicted of an aggravated felony at any time after admission" is removable from the United States. 8 U.S.C. § 1227(a)(2)(A)(iii). Being convicted of an aggravated felony also makes an alien ineligible for certain forms of discretionary relief from removal. *See id.* §§ 1158(b)(2)(A)(ii), (B)(i); §§ 1229b(a)(3), (b)(1)(C).

Congress has defined an "aggravated felony" to include, in pertinent part, "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)."[1] 8 U.S.C. § 1101(a)(43)(B). In turn, a "drug trafficking crime" is defined as "any felony punishable under the Controlled Substances Act (21 U.S.C. [§] 801 et seq.)." 18 U.S.C. § 924(c)(2). A "felony punishable under the Controlled Substances Act" can include not only federal offenses, but also state offenses. *See Moncrieffe v. Holder*, 133 S. Ct. 1678, 1683 (2013). And a "state offense constitutes a 'felony punishable under the Controlled Substances Act' only if it proscribes conduct punishable as a felony under that federal law." *Lopez v. Gonzales*, 549 U.S. 47, 60 (2006).

---

[1] We have previously referred to these as the "'illicit trafficking element' route and the 'hypothetical federal felony' route," respectively. *Evanson v. Att'y Gen. of the U.S.*, 550 F.3d 284, 288–89 (3d Cir. 2008).

To determine whether a state offense proscribes conduct punishable as a felony under the Controlled Substances Act, we generally employ a "categorical approach" to the underlying statute of conviction. *See Moncrieffe*, 133 S. Ct. at 1684. Under the categorical approach, we "focus solely on whether the elements of the crime of conviction sufficiently match the elements of [the] generic [federal offense], while ignoring the particular facts of the case." *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). We look "not to the facts of the particular prior case, but instead to whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding aggravated felony." *Moncrieffe*, 133 S. Ct. at 1684 (internal quotation marks omitted). "Because we examine what the state conviction necessarily involved, not the facts underlying the case, we must presume that the conviction rested upon nothing more than the least of the acts criminalized, and then determine whether even those acts are encompassed by the generic federal offense." *Id.* (internal quotation marks and formatting omitted). And "our focus on the minimum conduct criminalized by the state statute is not an invitation to apply 'legal imagination' to the state offense; there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'" *Moncrieffe*, 133 S. Ct. at 1684 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).

But some cases involve convictions under state statutes that "list elements in the alternative, and thereby define multiple crimes," *Mathis*, 136 S. Ct. at 2249, or that "contain several different crimes, each described separately," *Moncrieffe*, 133 S. Ct. at 1684. The Supreme Court refers to

4

these statutes as "divisible" statutes. *Mathis*, 136 S. Ct. at 2249. To these statutes, we apply the "modified categorical approach."[2] *See id.*; *Mellouli v. Lynch*, 135 S. Ct. 1980, 1986 n.4 (2015); *see also Rojas v. Att'y Gen. of the U.S.*, 728 F.3d 203, 215 (3d Cir. 2013) (en banc) (noting the modified categorical approach applies "[w]hen a statute of conviction lists elements in the alternative, some of which fit the federal definition and some of which do not"). We apply the modified categorical approach to divisible statutes in order to "determine what crime, with what elements, a defendant was convicted of." *Mathis*, 136 S. Ct. at 2249; *see also Moncrieffe*, 133 S. Ct. at 1684 (holding the modified categorical approach is applied to divisible statutes in order to "determine which particular offense the noncitizen was convicted of"); *Evanson v. Att'y Gen. of the U.S.*, 550 F.3d 284, 291 (3d Cir. 2008) (holding courts should use the modified categorical approach "to determine which of the alternative elements was the actual basis for the underlying conviction").

Under the modified categorical approach, "a court may determine which particular offense the noncitizen was convicted of by examining the charging document and jury instructions, or in the case of a guilty plea, the plea agreement, plea colloquy, or some comparable judicial record of the factual basis for the plea." *Moncrieffe*, 133 S. Ct. at 1684 (internal quotation marks omitted); *see also Shepard v. United States*, 544 U.S. 13, 16 (2005) ("generally limit[ing]"

---

[2] The modified categorical approach is not distinct from the categorical approach, but rather a "tool for implementing the categorical approach." *Descamps v. United States*, 133 S. Ct. 2276, 2284 (2013).

a court "to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented"). But "[o]ff limits to the adjudicator . . . is any inquiry into the particular facts of the case." *Mellouli*, 135 S. Ct. at 1986 n.4.

## B.

Singh is a citizen of India who was admitted to the United States as a lawful permanent resident in 2009. He ran two convenience stores in Clearfield County, Pennsylvania. In November 2011, Pennsylvania State Police troopers searched his stores for illegal substances. As a result of these searches, almost one year later, the Clearfield County District Attorney filed two separate criminal informations against Singh, charging him with violating 35 P.S. § 780-113(a)(30), which outlaws "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance . . . or knowingly creating, delivering, or possessing with intent to deliver, a counterfeit controlled substance," (2) conspiring to violate § 780-113(a)(30), in violation of Pennsylvania's conspiracy statute, 18 Pa. C.S.A. § 903(a)(1), and (3) violating 35 P.S. § 780-113(a)(16), which outlaws "[k]nowingly or intentionally possessing a controlled or counterfeit substance." AII-224 to -225.[3] The informations did not specify the substance in question.

On May 1, 2013, Singh pleaded guilty to one count of violating § 780-113(a)(30) and one count of conspiring to

---

[3] The longer criminal information charged Singh with two counts of each of these offenses. *See* AII-224 to -225.

6

violate § 780-113(a)(30). Both Singh and the District Attorney signed a "Negotiated Plea Agreement and Guilty Plea Colloquy" describing these counts as involving a "PA Counterf[e]it Substance – Non Fed." AII-239. Singh also signed a separate form document titled "Guilty Plea Colloquy." AII-241 to -244. Paragraph 43 of the Guilty Plea Colloquy reads: "Do you agree that the facts set forth in the Criminal Complaint and Affidavit of Probable cause filed against you are an accurate statement of your role in regard to the charges to which you are pleading guilty?" AII-243 ¶ 43. Singh circled "YES." *Id.*

The transcript of Singh's oral plea colloquy indicates he pled guilty to "possession with intent to deliver a counterfeit substance under Pennsylvania law but not under federal law" and "criminal conspiracy to commit possession with the intent to deliver, a counterfeit substance, which is designated a counterfeit substance, under Pennsylvania law but not under federal law." AII-299. The transcript of the oral plea colloquy, like the informations, did not specify the substance in question. Singh was sentenced to an indefinite term of imprisonment not to exceed one year less one day.

On April 17, 2014, the Department of Homeland Security (DHS) began removal proceedings against Singh under the INA. DHS charged Singh as removable under four sets of statutory provisions: (1) 8 U.S.C. § 1227(a)(2)(A)(iii), for being convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(B) (the possession offense); (2) 8 U.S.C. § 1227(a)(2)(B)(i), for being convicted of "a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of

7

Title 21)"; (3) 8 U.S.C. § 1227(a)(2)(A)(i), for being convicted of a "crime involving moral turpitude" ("CIMT"); and (4) 8 U.S.C. § 1227(a)(2)(A)(iii) (again), for being convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(U) (the conspiracy offense).

On June 18, 2014, an immigration judge (IJ) held Singh was removable under sections 1227(a)(2)(A)(iii) and 1227(a)(2)(B)(i). To find Singh removable under section 1227(a)(2)(B)(i), the IJ applied the modified categorical approach "to determine whether the offense for which [Singh] was convicted 'relates to' a controlled substance as defined in 21 U.S.C. § 802." AII-276. Looking to the criminal complaint against Singh, the IJ identified the substance Singh was convicted of possessing as JWH-122, a "cannabimimetic agent." AII-277. The IJ noted JWH-122 "is listed as a schedule I controlled substance under the Controlled Substances Act" and accordingly found Singh was removable. *Id.* The IJ also applied the modified categorical approach to hold Singh was removable under section 1227(a)(2)(A)(iii) for being convicted of an aggravated felony. Five days later, the IJ found Singh removable under section 1227(a)(2)(A)(i) as well.

Singh filed a motion to reopen and reconsider with the IJ. In support of his motion, Singh filed a "joint stipulation and clarification" between Singh's attorney and William A. Shaw, Jr., the Clearfield County District Attorney, indicating that: (1) the Guilty Plea Colloquy form is a standard form used by the Clearfield County Court of Common Pleas in the entry of a plea; (2) paragraph 43 of the form "refers generally to the underlying factual allegations against the Defendant and do[es] not constitute an admission of any specific facts

8

except those to which Defendant is actually pleading guilty"; (3) "[i]n this case Defendant [Singh] plead[ed] only to the delivery of an unidentified counterfeit substance under Pennsylvania law"; and (4) "it is the understanding of both the defendant and the Commonwealth that the unidentified substance was neither a counterfeit [n]or a controlled substance under federal law." AII-133. The IJ did not rule on this motion.

Singh then appealed to the BIA, which construed his unadjudicated motion to reopen as a motion to remand, granted it, and remanded the matter for an IJ to consider the "joint stipulation and clarification" in the first instance. AII-072 to -074. On remand, a different IJ found Singh removable as charged. Singh again appealed to the BIA.

On appeal, the BIA considered only whether Singh was removable under 8 U.S.C. 1227(a)(2)(A)(iii) for being convicted of an aggravated felony for the possession offense. It did not consider whether the conspiracy offense was also an aggravated felony. Because the BIA held Singh was removable for being convicted of an aggravated felony, it "f[ou]nd it unnecessary to decide" whether Singh was also removable under sections 1227(a)(2)(A)(i) and (2)(B)(i). AI-4 n.1.

The BIA said it would apply the categorical approach described in *Moncrieffe*. It noted *Moncrieffe*'s qualification that "there must be a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." AI-5 (quoting *Moncrieffe*, 133 S. Ct. at 1685 (internal quotation marks omitted)). The BIA stated Singh was convicted of

9

"knowingly . . . possessing with intent to deliver a counterfeit controlled substance as well as conspiracy to do so." *Id.* (internal quotation marks omitted).

The BIA described its initial task under the categorical approach as deciding "whether possession of a mislabeled controlled substance with intent to transfer it to another person in violation of § 780-113(a)(30) is *necessarily* conduct punishable as a Federal felony." AI-6. It held Singh's "conviction record gave the Immigration Judge good reason to believe that the [substance] at issue in his case *was* a Federally controlled substance at the time of his conviction." AI-7. The BIA looked to what it called Singh's "plea agreement" and said it contained "an affirmative stipulation that the facts set forth in the Criminal Complaint and Affidavit of Probable cause filed against [Singh were] an accurate statement of [his] role in regard to the charges to which [he was] pleading guilty." *Id.* (internal quotation marks omitted). The BIA further stated that "[t]he attached Criminal Complaint and Affidavit of Probable Cause both identif[ied] the offending substance at issue in the respondent's case as 'JWH-122,' a synthetic cannabinoid that was added to the Federal controlled substance schedules by name on July 9, 2012." *Id.* (internal citation omitted).

Finding no "reported decision of a Pennsylvania court in which a defendant was convicted . . . [for] conduct involving a substance that was not included in the Federal controlled substance schedules," AI-6, and that Singh's own case did not involve that kind of substance, the BIA held "there [wa]s no 'realistic probability' that Pennsylvania actually prosecutes people under § 780-113(a)(30) for misconduct involving substances that are not federally

10

controlled," AI-8. Accordingly, the BIA concluded DHS carried its burden of proving by clear and convincing evidence that Singh's offense of conviction was an aggravated felony, and dismissed Singh's appeal. Singh petitioned us for review.

## II.

The IJ had jurisdiction under 8 U.S.C. § 1229a. The BIA had jurisdiction under 8 C.F.R. §§ 1003.1(b)(3) and 1240.15. We have jurisdiction under 8 U.S.C. § 1252(a). Although "no court shall have jurisdiction to review any final order of removal against an alien who is removable" for having been convicted of an "aggravated felony," *id*. § 1252(a)(2)(C), we have jurisdiction to determine "whether the necessary jurisdiction-stripping facts are present in a particular case," including "whether [the alien] has been convicted of one of the enumerated offenses," *Borrome v. Att'y Gen. of the U.S.*, 687 F.3d 150, 154 (3d Cir. 2012).

"When the BIA issues its own decision on the merits, rather than a summary affirmance, we review its decision, not that of the IJ." *Chavez-Alvarez v. Att'y Gen. U.S.*, 783 F.3d 478, 482 (3d Cir. 2015) (internal quotation marks omitted). "We may consider the opinion of the IJ only insofar as the BIA deferred to it." *Id*. (internal quotation marks omitted). Whether an alien's offense is an aggravated felony "is reviewed de novo as it implicates a purely legal question that governs the appellate court's jurisdiction." *Restrepo v. Att'y Gen. of the U.S.*, 617 F.3d 787, 790 (3d Cir. 2010).

## III.

## A.

The BIA applied the categorical approach, rather than the modified categorical approach, to determine whether Singh was convicted of an aggravated felony. *See* AI-8 ("[W]e find it unnecessary to conduct a 'modified categorical' inquiry in this matter."). Although Singh never squarely contends in his opening brief that this was error, he suggests that in cases involving section 780-113(a)(30), "the categorical and modified-categorical approach must be employed to identify the type of substance involved." Br. Appellant 27. We treat this as a request to apply the modified categorical approach. The government also says the modified categorical approach is proper, requesting that we "remand to allow the Board to apply the modified categorical analysis in the first instance." Resp't's Answering Br. 9.

We agree with both Singh and the government that the BIA should have applied the modified categorical approach. In a recent immigration case, we held section 780-113(a)(30) is divisible "with regard to both the conduct and the controlled substances to which it applies." *Bedolla Avila v. Att'y Gen. U.S.*, No. 15-1860, 2016 WL 3443112, at *3 (3d Cir. June 23, 2016). Accordingly, reliance on the modified categorical approach is proper, and the BIA erred in concluding that it was "unnecessary to conduct a 'modified categorical' inquiry in this matter." AI-8.

## B.

The government contends we should remand this matter to the BIA to conduct the modified categorical analysis in the first instance. It contends Singh's "challenge to the

immigration judge's analysis under the modified categorical approach is not properly before the Court" because "[t]he Board did not uphold the immigration judge's analysis, and the Court reviews the Board's decision and only the aspects of the immigration judge's decision that the Board considered." Resp't's Answering Br. 13 n.4. But the BIA attempted to answer the same question with which we are faced: whether Singh's conviction under section 780-113(a)(30) is an aggravated felony. And whether that is so "is reviewed de novo as it implicates a purely legal question." *Restrepo*, 617 F.3d at 790. Accordingly, we will address whether Singh's conviction is an aggravated felony under the modified categorical approach.[4]

## C.

## 1.

---

[4] We further note the BIA contended it was not applying the modified categorical approach, but its analysis employed a feature of that approach. Section 780-113(a)(30) outlaws "the manufacture, delivery, or possession with intent to deliver, a controlled substance . . . or knowingly creating, delivering, or possessing with intent to deliver, a counterfeit controlled substance." The BIA specified "it is undisputed" that Singh was convicted of "knowingly . . . *possessing* with intent to deliver a counterfeit controlled substance," rather than "creating" or "delivering" such a substance. AI-5 (emphasis added); *see also Commonwealth v. Mohamud*, 15 A.3d 80, 90 (Pa. Super. Ct. 2010) (describing possession as an "element" of section 780-113(a)(30)).

Under the modified categorical approach, an adjudicator must "determine which particular offense the noncitizen was convicted of." *Moncrieffe*, 133 S. Ct. at 1684. The BIA addressed only Singh's conviction under section 780-113(a)(30). That section outlaws "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance . . . or knowingly creating, delivering, or possessing with intent to deliver, a counterfeit controlled substance." 35 P.S. § 780-113(a)(30). As the BIA noted, Pennsylvania law defines a counterfeit controlled substance to mean a controlled substance:

> which, or the container or labeling of which, without authorization, bears the trademark, trade name, or other identifying mark, imprint, number, or device, or any likeness thereof, of a manufacturer, distributor, or dispenser other than the person or persons who in fact manufactured, distributed, or dispensed such substance and which thereby is falsely purported or represented to be the product of, or to have been distributed by, such other manufacturer, distributor, or dispenser.

35 P.S. § 780-102(b). Pennsylvania law defines a controlled substance, in turn, as "a drug, substance, or immediate precursor included in Schedules I through V of [the Pennsylvania Drug and Alcohol Abuse Control Act (PDAACA)]." 35 P.S. § 780-102(b). Those schedules are codified at 35 P.S. § 780-104.

"The first task for a . . . court faced with an alternatively phrased statute is . . . to determine whether its

14

listed items are elements or means." *Mathis*, 136 S. Ct. at 2256. Elements are "the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'" *Id.* at 2248 (quoting Black's Law Dictionary 634 (10th ed. 2014)). If the listed items "are elements, the court should do what we have previously approved: review the record materials to discover which of the enumerated alternatives played a part in the defendant's prior conviction, and then compare that element (along with all others) to those of the generic crime." *Id.* at 2256. "But if instead they are means, the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution." *Id.*

When a ruling from an "authoritative source[] of state law" resolving this means-or-elements question "exists, a . . . judge need only follow what it says." *Id.* Here, we have that kind of ruling from the Superior Court of Pennsylvania.[5] In

---

[5] Ordinarily, in matters of state substantive law, we look to "how the highest court of that state"—here, the Supreme Court of Pennsylvania—"would decide the relevant legal issues." *In re Wettach*, 811 F.3d 99, 114 (3d Cir. 2016) (internal quotation marks omitted). But "[w]here an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 254 (3d Cir. 2010) (ultimately quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)). Here, there is no opinion or other "persuasive data" on point from the Supreme

15

*Commonwealth v. Swavely*, a defendant was convicted under section 780-113(a)(30) of "possession with intent to deliver and delivery of a [Pennsylvania] Schedule II controlled substance (Tuinal) and possession with intent to deliver and delivery of a [Pennsylvania] Schedule IV controlled substance (Talwin)." 554 A.2d 946, 947 (Pa. Super. Ct. 1989). The court held "[e]ach offense includes an element distinctive of the other, *i.e.* the particular controlled substance." *Id.* at 949. Accordingly, drug identity—"the particular controlled substance" at issue—is an element of section 780-113(a)(30).

This holding is consistent with the weight of our prior precedent and other judicial authority. In *Bedolla Avila*, we held section 780-113(a)(30) "is divisible with regard to both the conduct *and the controlled substances to which it applies*." 2016 WL 3443112, at *3 (emphasis added). In *United States v. Abbott*, we held "the type of drug, insofar as it increases the possible range of penalties, is an element" of section 780-113(a)(30). 748 F.3d 154, 159 (3d Cir. 2014). And in *United States v. Tucker*, we stated "[p]ossession (or manufacture, or delivery) of a 'controlled substance' is an element of the [section 780-113(a)(30)] offense; to prove it, the prosecution must prove that the substance in question was one of those enumerated in Pennsylvania's controlled substance schedules." 703 F.3d 205, 215 (3d Cir. 2012).[6]

---

Court of Pennsylvania, so it is appropriate to rely on a decision of the Superior Court of Pennsylvania.

[6] In *Tucker*, we also "rejected" the contention "that *Commonwealth v. Kelly*, 487 Pa. 174 . . . (1979), stands for the proposition that the fact finder does not need to find which drug type was involved in the § 780-113(a)(30)

Finally, the Ninth Circuit has held a similar list of controlled substances consists of alternative elements, and is accordingly divisible. *See Coronado v. Holder*, 759 F.3d 977, 984–85 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 1492 (2015).

**2.**

Because drug identity is an element of a conviction under section 780-113(a)(30), next, we must "do what [the Supreme Court] ha[s] previously approved: review the [*Shepard*-approved] record materials to discover which of the enumerated alternatives played a part in the defendant's prior conviction, and then compare that element (along with all others) to those of the generic crime." *Mathis*, 136 S. Ct. at 2256. "Whether one of these *Shepard*-approved documents 'contains sufficient information to permit a conclusion about the character of the defendant's previous conviction will vary from case to case.'" *United States v. Marrero*, 743 F.3d 389, 395 (3d Cir. 2014) (quoting *United States v. Johnson*, 587 F.3d 203, 213 (3d Cir. 2009)).

Here, documents both *Moncrieffe* and *Shepard* identified as relevant to our inquiry in guilty-plea cases—Singh's plea agreement and plea colloquy—contain sufficient information to permit a conclusion about the character of Singh's previous conviction. Singh's "Negotiated Plea Agreement and Guilty Plea Colloquy" describes his conviction as involving a "PA Counterf[e]it Substance – Non Fed." AII-239. And the transcript of Singh's oral plea colloquy indicates he pled guilty to "possession with intent to

---

violation." *Abbott*, 748 F.3d at 159 n.5 (citing *Tucker*, 703 F.3d at 215–16).

17

deliver a counterfeit substance under Pennsylvania law but not under federal law" and "criminal conspiracy to commit possession with the intent to deliver, a counterfeit substance, which is designated a counterfeit substance, under Pennsylvania law but not under federal law." AII-299. These documents permit us to conclude that whichever drug identity Singh's previous conviction involved, it was not a drug identity listed as a federal controlled substance.[7]

"[C]ompar[ing] th[e] element" of drug identity "(along with all others) to those of the generic crime," *Mathis*, 136 S. Ct. at 2256, we conclude the elements of Singh's crime of conviction do not "sufficiently match" the elements of the generic federal offense, *id.* at 2248. That is, Singh's crime of conviction does not "categorically fit[] within the 'generic' federal definition of a corresponding aggravated felony." *Moncrieffe*, 133 S. Ct. at 1684.

The relevant federal "corresponding aggravated felony" here is "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." 8 U.S.C. § 1101(a)(43)(B). As we have noted, a "drug trafficking crime" is defined as "any felony punishable under the Controlled Substances Act (21 U.S.C. [§] 801 et seq.)." 18 U.S.C. § 924(c)(2). And the Controlled Substances Act (CSA) outlaws "knowingly . . . posses[sing] with intent to distribute or dispense, a counterfeit substance." 21 U.S.C. §§

---

[7] Accordingly, we have no need to, and do not, consider whether the form document titled "Guilty Plea Colloquy" amounts to a "comparable judicial record of the factual basis for the plea" that would qualify as a *Shepard* document.

841(a), (a)(2). This is the appropriate generic federal offense analog for convictions for "knowingly possessing with intent to deliver a counterfeit controlled substance" under section 780-113(a)(30).

> The CSA defines a "counterfeit substance" as:
>
> a controlled substance which, or the container or labeling of which, without authorization, bears the trademark, trade name, or other identifying mark, imprint, number, or device, or any likeness thereof, of a manufacturer, distributor, or dispenser other than the person or persons who in fact manufactured, distributed, or dispensed such substance and which thereby falsely purports or is represented to be the product of, or to have been distributed by, such other manufacturer, distributor, or dispenser.

21 U.S.C. § 802(7). The CSA further defines "controlled substance" as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of [title 21, chapter 13, subchapter I]." 21 U.S.C. § 802(6). These schedules are codified at 21 C.F.R. § 1308.11 to .15. By definition, a "PA Counterf[e]it Substance – Non Fed," AII-239, or a "counterfeit substance under Pennsylvania law but not under federal law," AII-299, cannot be a substance listed on one of these schedules.[8] Accordingly, Singh's crime

---

[8] The BIA suggested "Pennsylvania courts and prosecutors do not speak authoritatively as to which substances are included in or excluded from the *Federal* controlled substance schedules." AI-7. It suggested "State courts and prosecutors

of conviction does not sufficiently match the elements of the generic federal offense,[9] and his conviction under section 780-113(a)(30) was not for an aggravated felony. The BIA

---

clearly have authority to identify which particular substance a defendant was convicted of possessing or distributing, but whether that substance is Federally controlled is a matter for the Federal authorities to decide." *Id.* In these statements, the BIA misapprehends the roles of the state court, federal authorities, and the federal courts in controlled-substance cases under the modified categorical approach. Both *Moncrieffe* and *Shepard* expressly direct federal adjudicators, whether sitting on the BIA or on the federal courts, to look to certain state-court records, like plea colloquies, when applying the modified categorical approach. Accordingly, relying on *Shepard*-approved state-court records to determine whether the substance in a section 780-113(a)(30) case is federally controlled is permissible, even when those records do not identify the drug's identity. Furthermore, to the extent the BIA purported to fashion a new standard requiring only that the IJ have "good reason to believe," AI-7, the substance at issue was a federally controlled substance, we reject it as inconsistent with the requirement that the government prove removability by "clear and convincing evidence," 8 U.S.C. § 1229a(c)(3)(A).

[9] Singh raised before us the question of whether "the proper date for determining whether [his conviction] constituted an aggravated felony was the date of the violation," or some other date, like the date of conviction. Br. Appellant 33. Because the *Shepard* documents here preclude the possibility that there is a sufficient match in Singh's case, regardless of which date is appropriate, we have no need to, and do not, decide this question.

erred in conducting a "realistic probability" inquiry, and concluding otherwise.[10]

## IV.

Accordingly, we will grant the petition for review, vacate the order of the BIA, and remand the case to the BIA for further proceedings consistent with this opinion.[11]

---

[10] We recognize *Moncrieffe* approved of something akin to a "realistic probability" inquiry. But in that case (and in *Duenas-Alvarez*), the relevant elements were identical. Here, the elements of the crime of conviction are not the same as the elements of the generic federal offense. The Supreme Court has never conducted a "realistic probability" inquiry in such a case. Accordingly, we believe this is a case where the "realistic probability" language is simply not meant to apply.

[11] We decline to address, and express no opinion on, any of the other arguments Singh raises on appeal.