**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 19-1848 & 19-2904
_____

VAMSIDHAR VURIMINDI,
                                          Petitioner

v.

ATTORNEY GENERAL
UNITED STATES OF AMERICA
_____

On Petition for Review of a Decision
of the Board of Immigration Appeals
(Agency No. A096-689-764)

Immigration Judge: Walter A. Durling
_____

Argued: October 27, 2021
_____

Before:  GREENAWAY, JR., KRAUSE, and PHIPPS,
*Circuit Judges*.

(Opinion Filed: August 24, 2022)

Rachel A.H. Horton [*ARGUED*]
Courtney G. Saleski
DLA Piper
1650 Market Street
One Liberty Place, Suite 5000
Philadelphia, PA 19103
   *Counsel for Petitioner*

Victoria M. Braga [*ARGUED*]
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
   *Counsel for Respondent*

————————

**OPINION**

————————

KRAUSE, *Circuit Judge*.

We are called on here to decide whether Pennsylvania's stalking statute, 18 Pa. Stat. and Cons. Stat. § 2709.1(a)(1), constitutes a removable offense under the Immigration and Nationality Act, or, applying the so-called "categorical approach," whether the elements of the Pennsylvania offense are a categorical match to the elements of the generic "crime of stalking" for which a noncitizen is removable under 8 U.S.C. § 1227(a)(2)(E)(i). Because the Board of Immigration Appeals

2

mistakenly found that Petitioner Vamsidhar Vurimindi failed to raise this issue before the Immigration Judge and denied two motions for relief on that basis, we must also decide whether this question is one we may address in the first instance. We conclude that we can and that because the Pennsylvania stalking offense sweeps more broadly than the federal generic under the categorical approach, it is not a removable offense. Accordingly, we will grant Vurimindi's consolidated Petitions for Review.

## I.     Factual and Procedural Background

Vurimindi, a native of India, came to the United States on a work visa in 2000, and after marrying an American citizen, became a lawful permanent resident in 2008. JA 74. Vurimindi's erratic behavior towards some of his neighbors eventually led to his arrest and conviction on two counts of misdemeanor stalking under Pennsylvania law. JA 74, 187, 244, 420. In relevant part, the Pennsylvania stalking statute makes it a crime to:

> engage[] in a course of conduct or repeatedly commit[] acts toward another person . . . under circumstances which demonstrate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person[.]

18 Pa. Stat. and Cons. Stat. § 2709.1(a)(1). Vurimindi was sentenced to two consecutive terms of fifteen to thirty months'

3

imprisonment followed by a period of supervised release. JA 74, 187.

In 2016, while Vurimindi was serving this sentence, the Government initiated removal proceedings against him under 8 U.S.C. § 1227(a)(2)(E)(i), which makes any noncitizen convicted of a "crime of stalking" removable from the United States. JA 72-74. But "crime of stalking" is not defined in the INA, so to ascertain whether Vurimindi's Pennsylvania conviction qualified under this removal provision, the IJ was required to apply the categorical approach, *i.e.*, comparing the elements of the relevant state offense with the elements of the federal generic offense. *See Descamps v. United States*, 570 U.S. 254, 257 (2013), JA 418-19.

After comparing the elements of a crime of stalking under the INA to those of the Pennsylvania stalking statute, the IJ concluded that "[Vurimindi's] conviction under the Pennsylvania statute is the prototypical case for stalking as set forth in [the] INA," and that Vurimindi was removable on that basis. JA 419. Vurimindi appealed to the BIA, arguing that the IJ erred in finding him removable because his "conviction under 18 PA CSA § 2709.1 do[es]n't constitute a crime of 'Stalking' under INA § 237(a)(2)(E)(i)." JA 496; *see* JA 492-96.[1]

---

[1] The IJ also rejected Vurimindi's argument that his convictions were not final, reasoning that Vurimindi's pending state case sought post-conviction relief and was not a direct appeal. JA 418. The BIA likewise rejected Vurimindi's challenge to the finality of his conviction. JA 62–63. That issue is not before us on appeal.

4

On appeal, the BIA issued three orders, the second and third of which are before us today. In the first order, the BIA mistakenly found that Vurimindi "does not contest his removability" and affirmed without addressing Vurimindi's argument that his Pennsylvania conviction was not a categorical match with the generic offense under the INA. JA 63 n.4. *But see* JA 496 (raising challenge to removability on categorical approach grounds). In the second, the BIA denied Vurimindi's motion to reopen, which it construed as a motion to reconsider the same categorical approach argument that it had deemed "waived" in the first order and that it continued to assert had not been "raised earlier in the proceedings." JA 68–69. Vurimindi then filed a motion for reconsideration of that order, which the BIA denied, stating that there was no "factual or legal error in our [prior] decision or any aspect of the respondent's case that was overlooked." JA 71.

Currently before us are Vurimindi's petitions for review of the second and third of these orders—the denials of his motion to reopen and motion for reconsideration. JA 11–13.

## II. Jurisdiction and Standard of Review

The BIA had jurisdiction over Vurimindi's appeal pursuant to 8 C.F.R. §§ 1003.1 and 1240.15, and over his motion to reconsider under 8 C.F.R. § 1003.2. This Court's jurisdiction is governed by 8 U.S.C. § 1252, which provides for judicial review of final orders of removal. Our review of the purely legal question presented by this appeal is plenary. *Moreno v. Att'y Gen.*, 887 F.3d 160, 163 (3d Cir. 2018).

We give deference to the BIA's definition of a crime of stalking so long as it is "based on a permissible construction of

5

the statute." *Mondragon-Gonzalez v. Att'y Gen.*, 884 F.3d 155, 158 (3d Cir. 2018) (citation omitted)). But we do not afford deference to its categorical approach determination or its "parsing of the elements of the underlying [state] crime," *Mahn v. Att'y Gen.*, 767 F.3d 170, 173 (3d Cir. 2014), because that analysis is based on interpretation of state law, *see Salmoran v. Att'y Gen.*, 909 F.3d 73, 77–78 (3d Cir. 2018).

## III. Discussion

On appeal, Vurimindi again urges that his Pennsylvania conviction is not a categorical match to the removable "crime of stalking" offense under the INA because the Pennsylvania statute is indivisible, with a single *mens rea* element that is satisfied by "either an intent to place [the victim] in reasonable fear of bodily injury or to cause substantial emotional distress to [the victim]," 18 Pa. Stat. and Cons. Stat. § 2709.1(a)(1), while the generic offense in the INA is limited to the intent to place the victim in "fear of bodily injury or death," *Matter of Sanchez-Lopez* ("*Sanchez-Lopez II*"), 27 I. & N. Dec. 256, 258 (BIA 2018) (construing 8 U.S.C. § 1227(a)(2)(E)(i)). For its part, the Government concedes that Vurimindi is not removable if the state statute is indivisible because that offense would then sweep more broadly than the INA's stalking offense. Oral Arg. Tr. 24:50–25:34; 45:42–59. It contends, however, that the state statute is properly considered divisible, with two alternative *mens rea* elements, one of which—the "intent to place [the] victim in reasonable fear of bodily injury"—is a categorical match to § 1227(a)(2)(E)(i). Answering Br. 18.

So the merits of Vurimindi's petitions come down to the divisibility of Section 2709.1(a)(1), but before we can address that issue, we must determine if we should remand for the BIA

6

to consider that question in the first instance. That is because, although the parties agree that the BIA erred in holding Vurimindi waived his challenge to removability, *see* Answering Br. 21–22, the BIA never addressed the merits of the IJ's conclusion that the statutes were a categorical match, *see* JA 61–71. Thus, we must first determine whether remand is required before we can turn to the proper reading of the Pennsylvania statute and the proper application of the categorical approach.

## A.     Whether Remand to the BIA Is Required

When faced with an issue that the BIA has not yet addressed, we typically follow the Supreme Court's instruction in *INS v. Orlando Ventura* to "remand a case to an agency for decision of a matter that statutes place primarily in agency hands." 537 U.S. 12, 16 (2002) (per curiam). In that case, where the Ninth Circuit reversed the BIA's denial of asylum based in part on *de novo* consideration of a changed-circumstances argument not addressed by the BIA, the Supreme Court held that failure to follow the ordinary remand rule violated "basic considerations" of administrative law: namely that, for a "decision of a matter that statutes place primarily in agency hands," remand permits an agency to "bring its expertise to bear upon the matter; . . . evaluate the evidence; . . . make an initial determination; and, in doing so, [the agency] can, through informed discussion and analysis, help a court later determine whether its decision exceeds the leeway that the law provides." *Id.* at 16–17.

Since *Ventura*, however, we and other Courts of Appeals have identified a number of exceptions to the remand rule where such "basic considerations" of administrative law do not apply. In *Jean-Louis v. Attorney General*, for example,

we declined to remand for the BIA to apply the categorical approach and simply applied it ourselves where the BIA had already utilized its expertise to define the *mens rea* required for the generic crime under the INA and the only remaining issue—application of the categorical approach—did not implicate the agency's expertise or statutory domain. 582 F.3d 462, 466–68 (3d Cir. 2009). More recently, in *Singh v. Attorney General*, we again declined to remand after concluding that the BIA erred in opting to apply the categorical approach instead of the modified categorical approach, and we applied the modified categorical approach ourselves, explaining that we would, in any event, be "review[ing] [the BIA's determination] de novo as it implicates a purely legal question." 839 F.3d 273, 282 (3d Cir. 2016) (quoting *Restrepo v. Att'y Gen.*, 617 F.3d 787, 790 (3d Cir. 2010)). And the Ninth and Eleventh Circuits have taken a similar approach. *See, e.g.*, *Talamantes-Enriquez v. Att'y Gen.*, 12 F.4th 1340, 1348–49 (11th Cir. 2021); *Mandujano-Real v. Mukasey*, 526 F.3d 585, 588–89 (9th Cir. 2008).

What these cases teach is that remand to the BIA is not required and the Court of Appeals may address an issue in the first instance where: (1) it is purely legal; (2) it does not implicate the agency's expertise; (3) review would be *de novo*; and (4) no fact-finding is necessary. In those circumstances, the agency's decision would be nothing more than an "idle and useless formality," rendering remand futile and unnecessary. *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969).

Here, each of those criteria is satisfied. First, questions of divisibility and application of the categorical approach are purely legal questions. *Singh*, 839 F.3d at 282; *see also Javier v. Att'y Gen.*, 826 F.3d 127, 130 (3d Cir. 2016); *Jean-Louis*, 582 F.3d at 466. Second, these questions require no special

8

agency expertise.  As in *Jean-Louis*, the BIA has already exercised its expertise by identifying the *mens rea* for the "crime of stalking" in the INA, *see Sanchez-Lopez II*, 27 I. & N. Dec. at 258, and the application of the categorical approach itself is not a question "that statutes place primarily in agency hands," *Jean-Louis*, 582 F.3d at 469 (citation omitted); *see Singh*, 839 F.3d at 282.  The only other issue, the divisibility of Section 2709.1(a)(1), is one of state law, and thus falls within our expertise, not the agency's.  *See Salmoran*, 909 F.3d at 77 ("'[W]e owe no deference to the BIA's interpretation of a state criminal statute,' which does not entail the BIA's special expertise[.]" (quoting *Javier*, 826 F.3d at 130)).  Third, precisely because these are purely legal questions that do not implicate the agency's expertise, we would review them *de novo*.  *Salmoran*, 909 F.3d at 76; *Singh*, 839 F.3d at 282.  And finally, resolving these questions does not require the evaluation of any additional evidence because "all relevant evidence regarding the conviction ha[s] been presented to the BIA in earlier proceedings."  *Fregozo v. Holder*, 576 F.3d 1030, 1039 (9th Cir. 2009); *see also Ventura*, 537 U.S. at 18.

Just as in *Singh* and *Jean-Louis*, remand under these circumstances "would be of no purpose and would lead to an unnecessary expenditure of time and resources," *Mandujano-Real*, 526 F.3d at 589, so we proceed to the merits of Vurimindi's petitions.

### B.    Whether the Statute Qualifies as a Removable Offense

To their credit, the parties here both recognize and acknowledge that Pennsylvania's stalking statute is a removable offense if it is divisible, and it is not if it is

9

indivisible.[2]   For those who may be unfamiliar with significance of the statute's divisibility for our analysis, however, we briefly explain the modification to the categorical approach that the Supreme Court has authorized in the case of divisible statutes before turning to the dispositive issue in this case: whether Pennsylvania's statute is, in fact, divisible.

The Supreme Court has provided two approaches to analyzing whether a state conviction qualifies as removable under the INA.  If the state offense is defined by a single set of elements, we apply the categorical approach, even where the statute provides different means by which one or more of those elements may be satisfied.  *See Rosa v. Att'y Gen.*, 950 F.3d 67, 75 (3d Cir. 2020).  Under the categorical approach, we compare the conduct covered by the elements of Pennsylvania's stalking statute to conduct covered by the elements of a crime of stalking under the INA to determine "if [the] state statute's elements define a crime identical to or narrower than the generic crime." *Larios v. Att'y Gen.*, 978 F.3d 62, 67 (3d Cir. 2020) (citing *Descamps*, 570 U.S. at 261).

---

[2] Vurimindi concedes that if the Pennsylvania statute is divisible, the offense with the alternative *mens rea* of "intent to place [the victim] in reasonable fear of bodily injury" would be a removable offense.  18 Pa. Stat. and Cons. Stat. § 2709.1(a)(1).  Even then, however, Vurimindi claims his conviction was not for a removable offense because, under the modified categorical approach, the record would not show he was found guilty of stalking with that intent, as opposed to the non-removable alternative of intent to place the victim in fear of nonphysical injury.  *See* Opening Br. 36–37.  As we conclude the statute is indivisible, we need not address this argument.

We "focus[] on the underlying criminal statute rather than the alien's specific act . . . to ascertain the least culpable conduct necessary to sustain a conviction under the statute." *Javier*, 826 F.3d at 130 (citations omitted). So if the state statute "covers more conduct" than the generic offense in the INA, then it is not a categorical match because it is "overbroad and does not match the generic offense." *Larios*, 978 F.3d at 67.

If, on the other hand, the statute "list[s] elements in the alternative," so that it "define[s] multiple crimes," *Mathis v. United States*, 579 U.S. 500, 505 (2016), then the statute is "divisible" and we apply the modified categorical approach, *Hillocks v. Att'y Gen.*, 934 F.3d 332, 339 (3d Cir. 2019) (citation omitted).[3] Under that approach, we first "determine which of the alternative elements was the actual basis for the underlying conviction," *Evanson v. Att'y Gen.*, 550 F.3d 284, 291 (3d Cir. 2008),[4] and we then "compare that crime, as the

---

[3] As the Supreme Court has explained, elements are "the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'" *Mathis*, 579 U.S. at 504 (quoting *Elements of Crime*, Black's Law Dictionary 634 (10th ed. 2014)).

[4] Under the modified categorical approach, we consider "extra-statutory materials" to determine whether the conviction, for example, "was [for] the version of the crime in the [state] statute . . . corresponding to" a removable crime under the INA. *Descamps*, 570 U.S. at 262–63. Appropriate materials can include the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented," but

11

categorical approach commands, with the relevant generic offense," *Mathis*, 579 U.S. at 506.

The generic offense here, of course, is the "crime of stalking" under 8 U.S.C. § 1227(a)(2)(E)(i). Although the INA itself does not define the elements of that generic offense, *see id.*, the BIA has done so, interpreting the term "crime of stalking," to require proof of three elements: (1) that the defendant engaged in conduct more than once, (2) that he directed the conduct at a specific victim, and, importantly for our purposes, (3) that he acted with intent to cause the victim "*fear of bodily injury or death*." *Matter of Sanchez-Lopez* ("*Sanchez-Lopez I*"), 26 I. & N. Dec. 71, 74 (BIA 2012) (emphasis added). And because the INA is a statute that the BIA is "charged with administering," and the term "stalking" is not plain and unambiguous, we accord "deference [to] the BIA's reasonable interpretation[]." *De Leon-Ochoa v. Att'y Gen.*, 622 F.3d 341, 348 (3d Cir. 2010).

Under that interpretation, however, a state statute that criminalized stalking with the intent to cause "fear [of] *nonphysical* injury" would be overbroad and would not support removal under the INA. *Sanchez-Lopez II*, 27 I. & N. Dec. at 260–61 (emphasis added); *see also In re Shaban*, 2018 WL 3045823, at *2 (BIA May 1, 2018) (finding no categorical match with a state stalking statute criminalizing conduct other than with the intent to cause fear of physical injury). That brings us to the dilemma confronting the Government in this case.

not "police reports or complaint applications." *Shepard v. United States*, 544 U.S. 13, 16 (2005).

12

By its terms, the Pennsylvania's statute matches the first two elements—the *actus reus*—of the federal generic offense, but as for *mens rea*, it criminalizes intent to cause nonphysical, as well as physical injury because it covers "circumstances which demonstrate *either* an intent to place [the victim] in reasonable fear of bodily injury *or* to cause substantial emotional distress to such [a] person." 18 Pa. Stat. and Cons. Stat. § 2709.1(a)(1) (emphasis added). Thus, if "reasonable fear of bodily injury" and "substantial emotional distress" are simply two means to satisfy a single *mens rea* element, the categorical approach applies and the Pennsylvania statute is not a categorical match because Section 2709.1(a)(1) would then "sweep[] more broadly" than stalking under the INA. *United States v. Scott*, 14 F.4th 190, 197 (3d Cir. 2021); *see also Larios*, 978 F.3d at 67. If Section 2709.1(a)(1) is divisible, on the other hand, then the modified categorical approach applies and the first alternative *mens rea*—intent "to place . . . in reasonable fear of bodily injury"—is a categorical match. *See Sanchez-Lopez II*, 27 I. & N. Dec. at 258. For us, then, to divide or not to divide—that is the question.

### C.      Whether Pennsylvania's Statute Is Divisible

In determining whether Pennsylvania's stalking statute is divisible, our first task is "to determine whether its listed items are elements or means." *Singh*, 839 F.3d at 283 (quoting *Mathis*, 579 U.S. at 517). To distinguish between elements and means, we determine whether "the [text of the] statute is clear on its face" and examine whether there are "prior state court decisions definitively answering the question." *Rosa*, 950 F.3d at 81 (citation omitted). If the statutory text and state court decisions are insufficiently clear, we "may look 'to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy).'" *Id.* (quoting

13

*Mathis*, 579 U.S. at 505). But if those documents also do not "speak plainly," then "the record will not be able to satisfy the 'demand for certainty' required" to demonstrate that the "defendant was convicted of [the] generic offense." *Id.* at 82 (quoting *Mathis*, 579 U.S. at 519). We consider these authorities in order of priority.

### 1. Text and Structure of Section 2709.1(a)(1)

We start with the text of Section 2709.1(a)(1), which provides in pertinent part that a person engages in the crime of stalking when they:

> engage[] in a course of conduct or repeatedly commit[] acts toward another person, . . . under circumstances which demonstrate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person[.]

18 Pa. Stat. and Cons. Stat. § 2709.1(a)(1). Parsing the text, a person only commits the crime when they act—*i.e.*, "engage[] in a course of conduct or repeatedly commit[] acts" that are directed "toward another person"[5]—in a certain manner—*i.e.*,

---

[5] While Section 2709.1(a)(1) is also worded disjunctively as to *actus reus*, neither party argues that it is divisible as to this element and we need not consider whether "course of conduct" and "repeatedly commits acts" are

14

"under circumstances which demonstrate" the statutorily enumerated intent. *Id.* And § 2709.1(a)(1) is worded disjunctively with respect to that intent, deploying the correlative conjunctives "either . . . or" to link the grammatically parallel infinitive phrases (1) "to place such other person in reasonable fear of bodily injury," and (2) "to cause substantial emotional distress to such other person." *Id.*

It is this disjunctive wording as to intent to which the Government points as textual evidence of divisibility. *See generally* Answering Br.; *see also* Oral Arg. Tr. 25:57–26:36. But that alone is not conclusive, for while disjunctives in statutes can provide "textual clue[s]" of divisibility, *Hillocks*, 934 F.3d at 343, they are not dispositive because statutes that merely "enumerate[] various factual means of committing a single element" are not in fact divisible, *Mathis*, 579 U.S. at 506. And here, other textual clues indicate that § 2709.1(a)(1) is in fact indivisible and that the enumerated intents are alternative means, not elements.

First, the statute does not repeat the phrase "an intent." This suggests a single intent element that can be "demonstrate[d]" through one of two means, 18 Pa. Stat. and Cons. Stat. § 2709.1(a)(1), rather than two, alternative intent elements, as words are to be given the meaning that proper grammar assigns them, *see* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 17 (2012). If it did repeat "intent," such that it read "either an intent to place . . . or an intent to cause . . . ," then the verb "demonstrate" would take two direct objects, stated in the

alternative means of satisfying an *actus reus* element, or two alternative means of satisfying a single element.

15

disjunctive—the noun phrases "an intent to place [in fear of bodily harm]" and "an intent to cause [emotional distress]," which would support the Government's argument that the two intents are elements rather than means. But the statute has a single direct object—"an intent"—with disjunctive modifiers—"to place [in fear of bodily harm]" and "to cause [emotional distress]"—that are grammatically parallel, 18 Pa. Stat. and Cons. Stat. § 2709.1(a)(1), which supports Vurimindi's argument that the modifiers are simply different means of satisfying a single intent element.

Second, the legislature's choice of the verb "demonstrate" in Section 2709.1(a)(1) is another strong textual signal that the alternative intents are means, not elements. A person must engage in the prohibited conduct "under circumstances which demonstrate" either of the alternative intents in order to violate the statute. 18 Pa. Stat. and Cons. Stat. § 2709.1(a)(1). And the plain meaning of "demonstrate" at the time of enactment was "to show clearly" or "to illustrate or explain esp[ecially] with many examples," *Demonstrate*, Merriam-Webster's Collegiate Dictionary 308 (10th ed. 1993); *see also Demonstrate*, Oxford English Dictionary 447 (2d ed. 1989) ("[t]o point out, indicate; to exhibit, set forth").[6] Thus, by describing the two alternatives as means of "demonstrate[ing]" intent, the statute communicates that they are illustrative, explanatory, and exhibitive of a separate and

---

[6] The word "demonstrate" was first included in Pennsylvania's stalking statute in 1993. *See* 18 Pa. Stat. and Cons. Stat. § 2709 (1993); 1993 Pa. Legis. Serv. 124 (West); *see also* B. Benjamin Haas, *The Formation and Viability of Anti-Stalking Laws*, 39 Vill. L. Rev. 1387, 1401 (1994) (noting that Pennsylvania's anti-stalking statute was enacted in 1993).

singular subject. They are, in short, means of proving the requisite *mens rea*, not elements.

Additional support for a finding of indivisibility comes from our decision in *United States v. Gonzalez*, 905 F.3d 165 (3d Cir. 2018), interpreting the federal cyberstalking statute, 18 U.S.C. § 2261A(2). In *Gonzalez*, the defendants argued that the district court erred in failing to give a jury instruction requiring, *inter alia*, that the jury unanimously agree on the defendants' *mens rea* to sustain a conviction under that statute. Like the Pennsylvania stalking statute, the federal cyberstalking statute utilizes the disjunctive to describe a singular "intent," requiring the Government to establish that the defendant:

> engaged in a course of conduct that placed a person in reasonable fear of death or serious bodily injury, or causes substantial emotional distress . . . "with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate" that person.

905 F.3d at 183 (quoting 18 U.S.C. § 2261A(2)).

After reviewing the text of the statute and caselaw interpreting it, we could discern no evidence that Congress "intended to create separate offenses for stalking 'with the intent to kill' as opposed to stalking 'with the intent to . . . injure' or 'with the intent to . . . harass,'" and therefore held that the different mental states in the statute constitute alternate factual means and not alternate elements. *Id.* at 185. In

17

reaching this conclusion, we found especially persuasive the fact that the cyberstalking statute "sets forth different tiers of punishment based not on the mental state of the defendant, but on the harm suffered by the victim," reflecting that their mental state must be evidenced by "equivalent blameworthiness or culpability." *Id.* at 185–86 (quoting *United States v. Yeaman*, 194 F.3d 442, 454 n.6 (3d Cir. 1999)).

Here, the Pennsylvania legislature drafted its stalking statute in a grammatically similar way, requiring a singular "intent" with disjunctive modifiers, and it also did not make punishment contingent on the intent of the defendant. Rather, the grade of the offense and the punishment for a violation of § 2709.1 are dependent on an offender's prior criminal history. *See* 18 Pa. Stat. and Cons. Stat. § 2709.1(c).[7] So, just as in *Gonzalez*, as long as the defendant's conduct "was taken with an intent to cause the victim harm, the specific mental state does not make a difference to the defendant's culpability." *Gonzalez*, 905 F.3d at 185. Thus, here too, that the sentencing scheme indicates that the different intent one "means" with "equivalent blameworthiness," *id.* (quoting *Yeaman*, 194 F.3d at 454 n.6), along with the text and grammar, favor a finding of different means, not different elements.

---

[7] Under the Pennsylvania stalking statute, an offense can be a first-degree misdemeanor or third-degree felony, depending on offender's criminal history. *See* 18 Pa. Stat. and Cons. Stat. § 2709.1(c).

18

## 2. Pennsylvania Courts' Interpretation of Section 2709.1(a)(1)

While parties may point to state court decisions as "authoritative sources of state law" that resolve a means-or-elements question, *Mathis*, 579 U.S. at 518, the Government has not identified any case that squarely addresses this question in relation to Section 2709.1(a)(1), Answering Br. 24–25, nor have we.[8] If anything, the smattering of cases discussing the elements of a Section 2709.1(a)(1) conviction suggest instead that Vurimindi has the stronger argument.

For instance, the Government points us to the Superior Court's statement in *Commonwealth v. Abed* that the "intent to place one in fear of bodily injury is but one *mens rea* that will sustain a conviction under § 2709[] . . . as a conviction may be upheld upon a showing that the accused intended to harass, annoy, alarm[,] or cause substantial emotional distress." 989 A.2d 23, 27 (Pa. Sup. Ct. 2010) (citation omitted). Answering Br. 24–25. But *Abed* is itself quoting the Superior Court's decision in *Commonwealth v. Miller*, 689 A.2d 238, 240 (Pa. Super. Ct. 1997), and *Miller* actually undermines the

---

[8] To determine whether an "authoritative source[] of state law," *Mathis*, 579 U.S. at 518, has resolved "this means-or-elements question," we try to determine how the Pennsylvania Supreme Court would decide the substantive legal issue, *Singh*, 839 F.3d at 283 & n.5. However, when, as here, "there is no opinion or other 'persuasive data' on point from the Supreme Court of Pennsylvania," we may rely on authoritative decisions of the Superior Court of Pennsylvania. *Id.* at 283 n.5 (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 254 (3d Cir. 2010)).

19

Government's reading, describing a singular "intent element," with alternative means of establishing that element. *See Miller*, 689 A.2d at 240 n.1 ("*The intent element* of stalking requires proof that the actor either intended to place the victim in reasonable fear of bodily injury or to cause substantial emotional distress." (emphasis added)). In any event, when read in context, *Abed* and *Miller*, which both involve sufficiency of the evidence challenges on direct appeal, suggest only that a Section 2709.1(a)(1) stalking conviction can be upheld where the Government proves that the defendant acted under circumstances demonstrating one of the two enumerated intents—not that each of the intents listed is a separate element of two alternative stalking crimes. *See Miller,* 689 A.2d at 239–41; *Abed*, 989 A.2d at 27–28.[9]

---

[9] The Government also cites two non-precedential decisions: *Commonwealth v. Heflin*, No. 1700 WDA 2013, 2014 WL 10588385, at *1 (Pa. Super. Ct. Sept. 30, 2014) (non-precedential), and *Commonwealth v. Hoffman*, No. 2277 EDA 2015, 2016 WL 7176962, at *1 (Pa. Super. Ct. Dec. 9, 2016) (non-precedential), as evidence of a divisible intent element. Answering Br. 25. Under Pennsylvania Court Rules, Pa. I.O.P. 65.37, we may consider such unpublished state court opinions as persuasive authority "when predicting state law," *Taransky v. Sec'y of U.S. Dep't of Health & Hum. Servs.*, 760 F.3d 307, 317 n.9 (3d Cir. 2014), but neither case is persuasive on this point. In *Heflin*, the Superior Court drew a distinction between the lower intent required for the crime of harassment and the higher "malevolent intent" required for stalking. 2014 WL 10588385, at *1. Nothing in that decision suggests that the intent element of the stalking statute is divisible; rather, the court simply addressed the sufficiency of the evidence issue raised by the defendant on appeal. *Id.* And in *Hoffman*—which

20

Similarly, although Pennsylvania courts have not squarely considered the divisibility of Section 2709.1(a)(1), those discussing the elements of a conviction uniformly describe the *mens rea* element as a singular "intent." *See, e.g.*, *Commonwealth v. Danzey*, 210 A.3d 333, 342 (Pa. Super. Ct. 2019) ("[B]oth Harassment and Stalking have *an intent element*." (emphasis added)), *appeal denied*, 219 A.3d 597 (Pa. 2019); *Commonwealth v. D'Collanfield*, 805 A.2d 1244, 1248–49 (Pa. Super. Ct. 2002) (interpreting a "virtually identical"

involved the admission of a 2003 stalking conviction as character evidence at trial—the trial court referred to "either section of [the] stalking [statute]," which the Government takes to establish two alternative intent elements. Answering Br. 25 (citing *Hoffman*, 2016 WL 7176962, at *3). Effective in mid-2003, the Pennsylvania legislature repealed and replaced the predecessor stalking statute with Section 2709.1. The previous statute enumerated the alternative intents in two numbered subsections. 18 Pa. Cons. Stat. Ann. § 2709(b)(1)–(2) (1999). The 2003 conviction at issue in *Hoffman* dealt with the previous version of the stalking statute, *see* Appellant's Br., *Commonwealth v. Hoffman*, 2016 WL 5944544, at *18 (Pa. Super. Ct. July 26, 2016), and thus the court's reference to "either section" of the statute literally refers to two subsections of the now-repealed stalking statute. In any event, the defendant in *Hoffman* argued that her prior conviction for stalking could not be probative of violence absent evidence of the underlying facts of her conviction, and the Superior Court flatly rejected this argument. 2016 WL 7176962 at *4. Thus, *Hoffman* does not imply—much less persuasively reason—that the alternative intents in Pennsylvania's stalking statute are elements rather than means.

stalking statute and holding that "stalking requires a repetitive course of malevolent conduct, *the intent of which* was to place someone in fear of bodily injury or cause substantial emotional distress" (emphasis added)); *see also Commonwealth v. Rushing*, 236 A.3d 1098 (Pa. Super. Ct. 2020) (non-precedential table decision) ("[S]talking requires *an intent* to create fear or emotional distress in the victim, *an element* not required to establish contempt." (emphasis added)), *appeal denied,* 239 A.3d 2 (Pa. 2020); *Commonwealth v. Mongeau*, 240 A.3d 153 (Pa. Super. Ct. 2020) (non-precedential table decision) (describing the intent element as the intent as "to place [the victim] in fear of bodily injury *and/or* to cause her substantial emotional distress." (emphasis added)), *appeal denied*, 244 A.3d 1225 (Pa. 2021).

### 3. Additional Evidence of Indivisibility

As a last resort, we "may look 'to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy),'" *Rosa*, 950 F.3d at 81 (quoting *Mathis*, 579 U.S. at 505), and here, those documents also support the conclusion that the statute is indivisible—even when the Government contends otherwise. *See* Answering Br. 26–30.

The documents specific to Vurimindi's conviction—including the criminal information, order of sentence, and trial disposition form—are a good illustration. The Government asserts that their references to "Stalking—Repeatedly Commits Acts to *Cause Fear*," as shorthand for Vurimindi's Section 2709.1(a)(1) conviction prove that Pennsylvania courts treat the two intents as giving rise to two different offenses. Answering Br. 28; *see also* JA131, 133–34. But its hypothesis, which is that the "cause fear" shorthand refers only

22

to stalking with intent to "cause fear of bodily injury," relegating the distinct offense of stalking with intent to cause emotional distress to a different shorthand, Answering Br. 27–29, is not borne out by a survey of the case law or dockets in Pennsylvania stalking cases.

To the contrary, that survey reveals that the same "cause fear" shorthand that appears in Vurimindi's paperwork is used in all Section 2709.1(a)(1) stalking cases, including those involving intent to cause substantial emotional distress. As just one example, though the Superior Court's opinion in *Commonwealth v. Sammy* makes clear that the defendant's conduct involved only "intent to cause substantial emotional distress," No. 1671 WDA 2016, 2018 WL 2010436, at *5 (Pa. Super. Ct. Apr. 30, 2018) (non-precedential), the docket repeatedly uses the shorthand "Stalking—Repeatedly Commit Acts To Cause Fear." *See Commonwealth v. Sammy*, No. CP-02-CR-0004751-2015 (Ct. Common Pleas, Allegheny Cnty. Oct. 6, 2016), *available at* https://ujsportal.pacourts.us/Report/CpDocketSheet?docketN umber=CP-02-CR-0004751-2015&dnh=WxFwQeZfNC5vOfV1S0%2Bu8A%3D%3D; *see also* Reply Br. 7 n.2 (collecting other examples). Pennsylvania's sentencing guidelines likewise use "Stalking—repeated acts to cause fear of BI [bodily injury]" as shorthand for all Section 2709.1(a)(1) cases, regardless of intent. *See* 204 Pa. Code § 303.15.

The Government also posits that the model jury instructions for Section 2709.1 support a finding that the statute is divisible as to intent.[10] Answering Br. 26. We draw

---

[10] We have previously considered Pennsylvania's pattern jury instructions to be relevant to our divisibility

the opposite conclusion. The relevant jury instructions are structured in a way that communicates only two elements—one *actus reas* and one *mens rea*:

> To find the defendant guilty of this offense, you must find that each of the following elements has been proven beyond a reasonable doubt:
>
> *First*, that the defendant:
>
>> a. engaged in a course of conduct . . . or
>>
>> b. repeatedly committed acts . . . or
>>
>> c. repeatedly communicated . . . and
>
> *Second*, that the defendant did so under circumstances that demonstrated that [he] [she] intended:
>
>> a. to put [*name of victim*] in reasonable fear of bodily injury; or

---

analysis, *see, e.g.*, *United States v. Steiner*, 847 F.3d 103, 119 (3d Cir. 2017); however, the Pennsylvania Supreme Court has explained that "[t]he Suggested Standard Jury Instructions themselves are not binding . . . ; rather, as their title suggests, the instructions are guides only," *Commonwealth v. Eichinger*, 108 A.3d 821, 845 (Pa. 2014). Thus, at most, the pattern jury instructions are but one relevant source of authority that we consider in determining whether Section 2709.1(a)(1) is divisible.

> b. intended to cause [him] [her] substantial emotional distress.

Pa. S.S.J.I. (Crim), § 15.2709.1. Even aside from enumerating only two elements, the "[f]irst," the act, and the "[s]econd," the intent, *id.*, a subcommittee note to these jury instructions explains that "[i]n a prior version of these instructions, the subcommittee had suggested that *a third element* of this offense required that the Commonwealth prove that the victim was actually placed in fear by the defendant's actions," and that because the proposed third element appeared neither in the statute nor in the decisions of Pennsylvania's appellate courts, the subcommittee removed it. *Id.* (emphasis added). Thus, directly contrary to the Government's reading, the pattern jury instructions make explicit that the alternative intents are simply means of satisfying the intent element.

In sum, the Government has identified no evidence that supports divisibility. The statute, the case law, and the available state court documents all support the opposite conclusion.[11] Because Pennsylvania's stalking statute is indivisible as to intent, we apply the categorical approach. And under the categorical approach, Section 2709.1(a)(1), which sweeps more broadly than its generic counterpart in the INA, is not a categorical match. Vurimindi's offense of conviction therefore does not qualify as a removable offense.

---

[11] Because there was no indictment, plea, or jury trial in Vurimindi's underlying criminal case, there are no additional documents associated with those events to review.

25

## IV.     Conclusion

For the foregoing reasons, we will grant Vurimindi's petitions, vacate the BIA's orders, and remand to the agency for further proceedings consistent with this opinion.